No. 7629.

CARPENTER *v.* GALLOWAY.

STATUTE OF FRAUDS.—*Parol Agreement.*—A verbal agreement to purchase all the mules which may be bred from a certain jack during a certain season, at the sum of $46 for each, is within the seventh section of the statute of frauds, and can not be enforced, unless the amount claimed is shown to be less than $50.

SAME.—Where a contract affected by the statute of frauds has been put in writing, and afterward orally modified, such modified agreement is within the statute.

PRACTICE.—*Answers to Interrogatories.*—As to when answers to special interrogatories will not overturn the general verdict, see opinion.

SAME.—*Uncertainty, How Corrected.*—*Venire de Novo.*—Where an interrogatory is direct and pertinent, and the answer of the jury is uncertain, it is error for the court to refuse a motion for a *venire de novo*, or, upon request, to require the jury to return a direct and certain answer.

From the Delaware Circuit Court.

*W. March,* for appellant.

MORRIS, C.—This suit was brought upon a note for $75.00,

given by the appellant to William Bryan, and by him assigned to the appellee. The appellant answered the complaint in two paragraphs. The first paragraph alleges that the note in suit was given in part payment for a jack, purchased by the appellant of the payee of the note, William Bryan ; that, to induce him to make the purchase, Bryan falsely and fraudulently represented to him that the jack was of the Mammoth breed and only three years old ; that the representations were made to deceive him, he having no knowledge of the jack, and being ignorant of his breed and age ; that he believed the representations to be true, and, relying upon them, purchased the jack of Bryan for $225, giving three notes of fifty dollars each, which had been paid, and the note in suit. He avers that the jack was not of the Mammoth breed, and was from ten to twelve years old ; that he was worth little or nothing for breeding purposes, and was worthless for all other purposes ; that, therefore, the consideration of the note had failed.

The second paragraph, which is called an answer, cross complaint and set-off, after stating that the note in suit was given in part payment for a jack, purchased by the appellant of Bryan, sets up a written contract, made between them at the time the jack was purchased, and before the assignment of the note to appellee, by which he agreed to stand the jack for mares during the season of 1864, and to contract for mules of the jack's getting during that season from mares 15½ hands high, and for all mules bred from him that season four feet in height, Bryan agreeing on his part to purchase all such mules from the appellant at $46.00 each, if delivered to him at the town of Zenas, Jennings county, Indiana, on the 15th day of September, 1865. It is alleged that the contract was in the possession of a third person in the town of Zenas, and a copy of it, therefore, could not be filed with the complaint. It is also stated that subsequently it was orally agreed between the parties, as a part of the original contract, that Bryan should purchase of appellant, at $46.00

each, all mules bred from said jack and good brood mares, that season, without regard to the height of the mares or mules; that the appellant agreed with the owners for forty-six mules at $40.00 each, and the use of the jack included, and had them at the town of Zenas on the 15th day of September, 1865, and there tendered them to Bryan; that they were of the description required by said contract, but that Bryan refused, without sufficient cause, to accept any of said mules, except three, although said mules were bred from said jack during the season of 1864, and from mares 15½ hands · high, or from good brood mares, or were four feet high; that they were in fact worth only $40.00 each; that by the refusal of Bryan to accept the mules as agreed, he lost the use of the jack and $6.00 on each mule, amounting to · $258.00. He offers to set off so much of said sum as will equal any sum found due upon said note, and demands judgment for costs.

The appellant replied by denial to the first paragraph of the answer, and demurred to the second or cross complaint. The demurrer was sustained, and the appellant excepted.

The cause was submitted to a jury, who returned a general verdict for the appellee, and the following answers to interrogatories submitted to them at the instance of the appellant:

"1. Was not the sole consideration of the note in controversy a part of the price of a jack sold to the appellant by Bryan, the payee of the note, for $225; and has not the balance of the purchase price, $150, been paid by the defendant, Carpenter, before the commencement of this action? Ans. Yes.

"2. Had the defendant ever seen, or had he any knowledge of, the jack before the time he purchased him of said Bryan? Ans. No.

"3. Did not the defendant, Carpenter, rely upon the rep-

resentations made by said Bryan, at the time he made the purchase, in regard to the age and breed of the jack? Ans. Yes, to some extent, but could have ascertained otherwise.

"4. Were the representations made by said Bryan, in relation to the breed and age of the jack, true, and was the jack as represented by him? Ans. As to age, no; as to breed, yes.

"5. What was the actual value of the jack, at the time he was purchased of said Bryan by the defendant? Ans. $225.

"6. What would have been the value of the jack, had he been as represented by said Bryan? Ans. $350.

"7. Did the defendant say or do anything to induce the plaintiff to procure the note at any time before it was assigned to her? If so, what was it, and when? Ans. No."

The court, of its own motion, submitted the following interrogatory to the jury:

"8. Did Bryan, the payee of the note, at the time of the sale of the jack, falsely and fraudulently, for the purpose of inducing the defendant to purchase the jack, represent to the defendant that the jack was only three years old, and of the Mammoth breed? If so, were they false and made to deceive, and did the defendant believe them to be true?"

The jury answered this interrogatory as follows:

"To all but the latter, no; to the latter, yes."

At the proper time, as appears by the bill of exceptions, the appellant moved the court to direct the jury to return to their room and make their answers to the third, fourth and eighth interrogatories more definite, which motion the court overruled, to which decision, at the proper time, appellant excepted.

The appellant then moved the court for judgment in his favor upon the special findings of the jury, which motion the court overruled, and he excepted.

The appellant also moved the court for a *venire de novo*,

which motion was overruled, and he excepted. He also moved the court for a new trial, which was overruled, and he excepted.

The errors assigned are as follows :

1. The court erred in sustaining the demurrer to appellant's cross complaint.

2. The court erred in refusing to render judgment in favor of the appellant upon the special finding of the jury.

3. The court erred in overruling the appellant's motion for a *venire de novo*.

4. The court erred in refusing to direct the jury to answer more definitely the third, fourth and eighth interrogatories.

5. The court erred in overruling appellant's motion for a new trial.

We will consider the questions in the order in which they are assigned for error. Did the court err in sustaining the demurrer to appellant's cross complaint?

The first contract set up in the cross complaint was in writing, but it was essentially modified by a subsequent verbal contract. By the written contract, Bryan agreed to buy mules of the heighth of four feet, or bred from mares fifteen and a half hands high. By the subsequent verbal contract, he agreed to purchase all the mules bred from the jack during the season of 1864, from good brood mares. The verbal agreement obviously changes and modifies the written agreement, not simply as to the manner of its performance, but in its terms. It is for a breach of this modified agreement that the appellant demands damages. It is, as he alleges, this modified agreement he offered to perform, and Bryan refused to carry out on his part. The appellant does not allege an offer to perform the written contract, nor does he claim to have suffered damages by reason of its non-performance by Bryan.

Is this modified contract within the 7th section of the stat-

Carpenter *v.* Galloway.

ute of frauds? and, if so, can the appellant, under the circumstances, insist upon it as a defence to the action? Is the price agreed to be paid for the mules presumably in excess of fifty dollars? It may be said that the number of mules which would be delivered upon the 15th day of September, 1864, was uncertain ; that the appellant might not be able to contract for more than one, and, therefore, as the sum to be paid for one was $46, it would not be within the statute. But, on the other hand, it may be said that more than one mule might be delivered, and, therefore, the price might exceed $50. In the case of *Watts* v. *Friend,* 10 B. & C. 446, the defendant agreed to supply the plaintiff with a quantity of turnip seed, and the plaintiff agreed to sow it on his own land, and sell the crop of seed produced, at £1 1s. the Winchester bushel. The seed so produced, at the price agreed upon, exceeded £10. It was held by the court that the contract was within the statute. Browne, in his work on the Statute of Frauds, approves this decision, and says that, in deference to the statute, the parties seeking to enforce such a contract should show that the price of the goods to be delivered did not exceed the amount named in the statute. Sec. 312 ; *Bowman* v. *Conn,* 8 Ind. 58 ; *Brown* v. *Sanborn,* 21 Minn. 402.

"It seems," says the same author, "to be well established that when a contract, affected by the statute, has been put in writing, and the plaintiff, in case of subsequent oral variation of some of the terms of the written agreement, declares upon the writing as qualified by the oral variation, he can not prevail." Browne Statute of Frauds, sec. 411, and cases cited.

We conclude that the contract set up in the cross complaint, if otherwise valid, is within the statute of frauds, and therefore void. *Krohn* v. *Bantz,* 68 Ind. 277. The court did not err in sustaining the demurrer to the cross complaint. Nor do we think the court erred in refusing to render judgment in favor of the appellant upon the special findings.

There is not enough found in them to justify a judgment for the appellant. We think, however, the court below erred in refusing the motion of the appellant for a *venire de novo*.

The third interrogatory is pertinent and direct. The answer is uncertain and indefinite. The jury say that the appellant relied to some extent upon the representations of Bryan as to the age and breed of the jack, but that the age and breed might have been otherwise ascertained. Just what is meant by the answer of the jury no one can tell. Whether the means of ascertaining the jack's age and breed were, at the time he purchased, within the appellant's reach, is left uncertain; and to what extent, whether in a material degree he relied upon the representations of Bryan, is also uncertain. The answer to the eighth interrogatory is still more uncertain. At the proper time, the appellant asked the court to require the jury to make these answers more certain. This the court refused to do.

In the case of *Peters* v. *Lane*, 55 Ind. 391, it is held, that where an interrogatory is direct and pertinent, and the jury return an uncertain answer, it is the duty of the court, if requested so to do before the jury is discharged, to require them to return a direct and certain answer. It is also held, that, where in such case the answer is uncertain, a *venire de novo* should be awarded. *The Cincinnati, etc., R. R. Co.* v. *Washburn*, 25 Ind. 259; *Trout* v. *West*, 29 Ind. 51; *Vater* v. *Lewis*, 36 Ind. 288.

For this error, the judgment below ought to be reversed.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the judgment below be, and the same is hereby, in all things reversed, at the costs of the appellee; that it be remanded for further proceedings, in accordance with this opinion.