No. 11,364.

THE BEDFORD, SPRINGVILLE, OWENSBURG AND BLOOM-
FIELD RAILROAD COMPANY *v.* RAINBOLT.

| 99 | 551 |
|---|---|
| 126 | 129 |
| 99 | 551 |
| 128 | 465 |
| 99 | 551 |
| 135 | 64 |
| 136 | 471 |
| 99 | 551 |
| 141 | 546 |
| 99 | 551 |
| 155 | 95 |
| 99 | 551 |
| e165 | 391 |

RAILROADS.—*Negligence.*—*Defective Bridge.*—*Pleading.*—In a suit against a railroad company for injury resulting from its negligence, an express averment that the plaintiff was guilty of no contributory negligence is not necessary, if that fact otherwise appears, *e. g.*, as where it is averred that while the plaintiff, being a passenger, was seated in the defendant's coach, the coach, by reason of the defendant's negligence, broke through a bridge, whereby, etc.

SAME.—*Care Required to Protect Passengers.*—*Presumption.*—*Evidence.*—Proof that a railroad passenger was injured by the train breaking through a bridge raised a presumption of negligence by the carrier, which may be rebutted by proof. The slightest negligence in such case imposes liability, the care required being the greatest that is practicable in keeping the machinery and bridges in safe condition, consistent with what are the known means of attaining that end.

SAME.—*Instruction.*—In the absence of proof that the safety of a properly constructed railroad bridge may depend upon the soundness of a single iron rod, the jury should not be instructed that if the bridge broke down because of a defect in such single rod, which was not discoverable, and the injury resulted therefrom, there could be no recovery.

PRACTICE.—*Venire de novo.*—*Answers to Interrogatories.*—*Cases Modified.*—Where the general verdict is in proper form, a failure of the jury to answer interrogatories does not authorize a *venire de novo*. *Peters* v. *Lake*, 55 Ind. 391, and *Carpenter* v. *Galloway*, 73 Ind. 418, modified.

SAME.—*Evidence.*—*Rebutting.*—Evidence which controverts that of the defendant as to particular facts is proper in rebuttal, though the same evidence would also have been proper as part of the plaintiff's original case.

From the Owen Circuit Court.

The Bedford, Springville, Owensburg and Bloomfield R. R. Co. v. Rainbolt.

*M. F. Dunn, G. G. Dunn, A. G. Cavins* and *E. H. C. Cavins,* for appellant.

*E. E. Rose* and *E. Short,* for appellee.

MITCHELL, J.—Solomon Rainbolt, on the 8th day of November, 1881, became a passenger on one of the trains of the Bedford, Springville, Owensburg and Bloomfield Railroad Company, to be carried from Switz City to Bedford.

While being thus carried, the car in which he was seated, together with the train by which he was proceeding, was precipitated into White river while passing over an iron or combination bridge built or used by the company. He sustained severe, and it is claimed permanent, injuries by the fall, and from being involved in the wreck of the train in the river.

His complaint for damages is in three paragraphs, which are in no material respect different from each other.

Preceded by the formal averments, the default of the railroad company is averred in the first paragraph, as follows: "That by the carelessness, negligence and default of its agents and employees, and for want of due care and attention to its duty in that behalf, the said cars broke through the railroad bridge across White river." And in the second as follows: "That by the carelessness, negligence and default of its agents, servants and employees, and for want of due care and attention to its duty in that behalf, the locomotive and cars were run upon and through the railroad bridge," etc. And in the third as follows: "That said defendant did, by its servants, agents and employees, carelessly and negligently conduct the running of said cars, and was so in default in the care and oversight of said railroad and bridges thereon, that said cars were ran upon the railroad bridge over and across White river, said bridge being, as defendants knew, insecure, and were thereby thrown into White river." Each paragraph concluded with an averment of the injuries sustained, and a claim for damages.

The trial resulted in a verdict and judgment, over a motion

The Bedford, Springville, Owensburg and Bloomfield R. R. Co. *v.* Rainbolt.

for a new trial, for the plaintiff, from which judgment the appellant prosecutes this appeal.

The argument of appellant's counsel embraces four points:

1. That the complaint is not sufficient, for failing to show, either by direct averment or by its statement of facts, that the appellee was himself without fault. For this alleged error, it is contended, the motion in arrest of judgment should have been sustained, there having been no demurrer to the complaint.

2. That by reason of the failure of the jury to make direct answers to some of the interrogatories propounded, a *venire de novo* should have been awarded.

3. That the court erred in giving, and refusing to give, certain instructions to the jury. A summary of those given and complained of, and those refused, will be found farther on.

4. That certain testimony admitted on behalf of the appellees as rebutting evidence was incompetent.

Concerning the first point, we have to say that while it is, and ought to be, the rule, that in actions for damages growing out of the alleged negligence of another, it must always be made to appear from the complaint, either by direct averment or by the statement of the facts and circumstances under which the injury occurred, that the plaintiff was without contributory fault or negligence, we are of the opinion that the complaint in this case is, nevertheless, sufficient within that rule.

The averment that the injury occurred in a given case without the fault or negligence of the plaintiff is not always controlling; nor is the absence of such averment in every case to be taken as a failure to aver due care.

Taking all the allegations of a complaint together, and notwithstanding the formal negative averment, the presumption of contributory negligence may appear, as in the cases of *President, etc.,* v. *Dusouchett,* 2 Ind. 586, *Riest* v. *City of Goshen,* 42 Ind. 339, and other cases, or conversely, as in *Duffy* v. *Howard,* 77 Ind. 182, and cases there cited.

From the averments in the complaint, in this case, it must be taken that the appellee was lawfully a passenger on the appellant's train of cars, presumably submitting to its rules and regulations as such. The giving way of the railroad bridge, over which the train was passing, precipitated him violently into the river below, inflicting upon him the injuries complained of, and it must be held from the situation in which the appellee is shown to have been, the relation which he occupied toward the railroad company, which relation placed him under no duty except to remain passive in its hands while being carried, that all presumption of negligence on his part is rebutted by the averments of the complaint. *Mitchell* v. *Robinson*, 80 Ind. 281 (41 Am. R. 812); *Michigan Southern, etc.,R. R. Co.* v. *Lantz*, 29 Ind. 528.

It is suggested in the argument, that it does not appear, but that he may have conducted himself negligently after the bridge went down, in the endeavor to extricate himself from the wreck, etc.; but we are not disposed to hold that a passenger who without fault becomes involved in a disaster of the apparent magnitude of that here described, should be required to aver or prove that he acted with prudence and deliberation while so involved. The court committed no error in overruling appellant's motion in arrest.

Was it error to overrule the appellant's motion for a *venire de novo* as contended in counsel's second point? If the question was properly raised in the record, the answer to it would depend upon whether the interrogatories, the answers to which are complained of, were pertinent and direct, and whether such answers are uncertain, indefinite or evasive.

The question of the sufficiency of the answers to the interrogatories is not properly raised by a motion for a *venire de novo*. A *venire de novo* can only properly be awarded where the verdict of the jury is so imperfect that a judgment can not be rendered thereon.

The general verdict, however, when in proper form, covers

all the issues in a given case, and it can not be said, because
an answer to an interrogatory returned with a general ver-
dict, properly framed, is indefinite, uncertain or ambiguous,
that, therefore, there is either a failure to find on all the
issues, or that there is an ambiguity in the finding or verdict
of the jury.   Until overthrown by a special finding, abso-
lutely inconsistent with it, the general verdict stands, and
the judgment which follows is supported by it, and does not
in any manner depend for support on the special interroga-
tories.   By failing to observe the distinction between a spe-
cial verdict or special finding of facts, and answers to inter-
rogatories propounded to the jury.   Some of the cases have
held that the failure of the jury to make certain and definite
answers to interrogatories may be a cause for a *venire de novo,*
but the proper way of saving the question in such case is in-
dicated in *West* v. *Cavins,* 74 Ind. 265, *McElfresh* v. *Guard,*
32 Ind. 408, and *Ogle* v. *Dill,* 61 Ind. 438.   These cases hold
that a failure of the jury to make definite answers to inter-
rogatories, where there is a general verdict returned, is not
proper ground for a *venire de novo,* and what is said in *Peters*
v. *Lane,* 55 Ind. 391, and *Carpenter* v. *Galloway,* 73 Ind.
418, indicating a different rule, may be regarded as modified
by the later cases.

We have examined the questions propounded to the jury,
and their answers, and while some of them are not answered
directly, we are, nevertheless, of the opinion, considering the
character and construction of the questions, that the answers
can not be said to be improper.   For the reasons mentioned,
there was no error in the ruling of the court in overruling the
motion for a *venire de novo.*

The next point argued is that the court erred in giving, of
its own motion, instructions numbered 8, 9, 11 and 12, and
in refusing to give the appellant's instructions, prayed for,
numbered 4, 5 and 7.   That we may not extend this opinion
beyond bounds, we give only the substance of the instruc-

tions complained of, which were given by the court, embrac-
ing all that is material to present the questions raised:

In the eighth instruction the jury were told, in substance,
that if they should find from the evidence that the plaintiff
was injured by an accident arising from a defect in the road
or bridge of said company, without any fault on his part, the
legal presumption is that the injuries of the plaintiff were
caused by the negligence of the defendant, and that this pre-
sumption might be overthrown by proof that the injuries com-
plained of resulted from inevitable accident, or from something
against which no human prudence or foresight could provide.

And in the ninth the jury were told, in substance, that while
a carrier does not, in legal contemplation, warrant the abso-
lute safety of passengers, it is yet bound to the exercise
of the utmost diligence and care, and that the slightest neg-
lect against which human prudence and foresight may
guard, and by which hurt or loss is occasioned, will render it
liable to answer in damages; and that the law imposed upon
a common carrier the duty of providing strong and sufficient
carriages or cars for the journey, and good and sufficient track,
culverts and bridges for said carriages or cars to pass over,
and to provide conductors and other agents whose duty it is
to use every precaution against danger, and that it was bound
to take notice of the manner in which its road and the bridges
are constructed, and the plan and size thereof, and whether
they are of such size and built on such plan as are required for
the safety of their passengers. It also contained, substan-
tially, the same instruction as to the presumption of negli-
gence and burden of proof as the eighth.

The eleventh and twelfth instructions were as follows:

"11th. If you find from the evidence that the accident was
occasioned by a condition of things which the company could
neither foresee nor provide against, then you should find for
the defendant.

"12th. If you find from the evidence that the immediate

The Bedford, Springville, Owensburg and Bloomfield R. R. Co. v. Rainbolt.

cause of the alleged disaster was the want of the proper construction of said bridge over White river, either as to size, material, piers or the adjustment thereof, then you should find for the plaintiff, unless you should further find that the size and construction of said bridge were right and proper for the use intended, and that the material in said bridge had been properly tested, by tests known to men skilled in such material, or could not be so tested and preserve the strength of said material, and said disaster was caused by a defect in said material which could neither be foreseen nor provided against by human foresight and care, then you should find for the defendant."

The objections which appellant's counsel urge against the foregoing instructions may be comprehended under the following summary :

*First.* That in laying it down as the law of the case, that if the accident and injury complained of were proved, a legal presumption arose that the railroad company was guilty of such negligence as cast upon it the burden of proving that the disaster occurred without any degree of negligence on its part ; and,

*Second.* That in instructing the jury that the slightest neglect on the part of the railroad company against which human prudence and foresight might have guarded, resulting in the disaster and injury complained of, rendered the company liable, and that it could only be excused from liability by showing that the disaster resulted from a condition of things which could neither be foreseen nor provided against by human foresight and care, the court stated a rule not warranted by the law, and too strict to be reasonably required of a common carrier of passengers.

As respects the burden of proof, we think the instruction of the court was clearly right. The instruction was in all essential particulars the same as that considered in the case of *Pittsburgh, etc., R. R. Co.* v. *Williams,* 74 Ind. 462. In that

case, an instruction, directing the jury that where a passenger in a railroad car was, without his fault, injured by the car in which he was riding being thrown from the track, the law will presume negligence on the part of the railroad company, was held to be a correct statement of the law, and the decision is fully sustained by the reasons given and the authorities cited.

Any other rule would, in many cases, leave a passenger who sustained an injury by the defective condition of a railway track or bridge practically without remedy. The contract which the law implies between the carrier and passenger is that the carrier has a safe and sufficient railroad track to the point of the passenger's destination; that its bridges and all the other means provided by it for his carriage are safe, and that all suitable means had been taken beforehand to carry him safely and without hurt to the point indicated. The condition of its cars, track and bridges, and the precautions which it has taken for their security and the safe transport of the passenger, are peculiarly within its own knowledge, and while, in most cases, it would be a denial to the injured passenger of all remedy to require him to show affirmatively wherein the company had failed, it is deemed a just and reasonable rule that the company should take the burden of showing that it used all proper precautions for the passenger's safety. *Philadelphia, etc., R. R. Co.* v. *Anderson*, 94 Pa. St. 351 (39 Am. R. 787). Some distinction is sought to be drawn by counsel between a "*prima facie* presumption" and a "legal presumption," and it is urged that the jury might well have understood, from being told that a legal presumption of negligence arose from the accident and injury, that such presumption was conclusive. We do not think the criticism justified. As used, we can perceive no difference between a *prima facie* presumption and a legal presumption. In this regard, as well as in respect to the degree of care required of a common carrier toward a passenger, and the condition of things which

will exonerate it from liability for an injury occasioned to a passenger resulting from a defective track or bridge, the instructions stated the law to the jury with commendable accuracy and precision.

The rule that there may be degrees in negligence has long ago been discarded in this State, and when it is said that an occurrence came about through the slight negligence or gross negligence of another, it is, in either case, nothing more than saying that such person was negligent; and so when the court told the jury that if the injury was occasioned through the slightest neglect of the railroad company, against which human prudence and foresight might have guarded, it would be held liable, it was equivalent to saying that if the appellant, by the exercise of prudence and foresight, might have discovered the defective condition of its bridge, then the neglect to exercise such prudence and foresight, resulting in injury, would render it liable. The addition of the word "human" to the prudence and foresight required neither added to nor detracted from the degree of care required.

The degree of diligence which the law requires of railroad companies, in keeping their track, bridges, culverts and cars in a safe condition, is expressed in a variety of terms in the books, but after a careful examination of the adjudged cases, we have been able to discover none in which a rule less exacting than that laid down by the court in this case was announced. In the maintenance of its track and bridges in a secure condition, the highest degree of practical diligence and care are required on the grounds of public policy. Considering that vast numbers of human beings are daily committing themselves to the care and fidelity of railroad companies, which for an adequate reward engage to transport them with great speed from point to point, any negligence in the maintenance of their tracks and bridges in such condition of safety, as practical skill and sagacity have attained to and applied generally to the subject, should not be tolerated.

While this rule does not require that common carriers should insure the safety of passengers, nor involve such an imaginary or speculative degree of skill or care as the human mind might conceive of or invent, so as to insure the safety of tracks and structures beyond all peradventure, it does, nevertheless, require that the highest degree of practical care and skill, consistent with the known, usual and approved appliances for that purpose, should be used and properly maintained.

A fair consideration of all the instructions given by the court are within this rule, which is approved, among many others, by the following authorities: *Taylor* v. *Grand Trunk R. W. Co.*, 48 N. H. 304, and the numerous cases there cited and commented upon; *Toledo, etc., R. W. Co.* v. *Conroy*, 68 Ill. 560; *Railroad Co.* v. *Aspell*, 23 Pa. St. 147; *Meier* v. *Pennsylvania R. R. Co.*, 64 Pa. St. 225; *Galena, etc., R. R. Co.* v. *Yarwood*, 15 Ill. 468; 2 Rorer R. R., 955, 956, 1086, 1088, and authorities there cited.

Most of the instructions which were asked by the appellant, and refused by the court, were intended to modify the rule of diligence as required in the instructions given by the court, and concerning these nothing need be added to what has already been said on that subject.

The fourth instruction asked by the appellant, and refused by the court, was, in substance:

That if the jury should find from the evidence that the accident was caused by the breaking of any particular rod in the bridge, which had in it an original internal defect, and that said rod, being necessary for the support of the bridge, broke, and that the breaking of said rod occasioned the fall of the bridge and train, and if the rod and bridge had had sufficient tests to justify the company in relying upon its safety, and the defect in the rod was not discoverable by reason of its position in the rod, or in the iron shoe or wood in which it was concealed, then the plaintiff could not recover.

The Bedford, Springville, Owensburg and Bloomfield R. R. Co. v. Rainbolt.

We think all that is relevant to the case in the foregoing instruction was comprehended in the instructions given by the court. Part of it relates to the degree of vigilance and care to be exercised by the company in the construction and maintenance of the bridge, which was covered by the instructions given by the court. That part of the instruction which proposes the theory that the bridge may have fallen on account of the breaking of one defective rod, is negatived by an answer of the jury to one of the appellant's interrogatories, in which the jury say, in substance, that the fall of the bridge was not caused by the breaking of one single rod. By this answer it is shown that the failure to give the instruction worked no detriment to the appellant; moreover, as we find no evidence tending to prove that this bridge fell by the breaking of one particular rod, or that any properly constructed railroad bridge would be liable to fall by the breaking of any one particular rod, we are not prepared to say, as a matter of law, that a railroad bridge so constructed as to depend for its safety on the integrity of any one rod would be such a bridge as, in the exercise of the degree of diligence required, a railroad company would be warranted in erecting or continuing in use.

Substantially, this instruction asked the court to say, as a matter of law, that if the fall of the bridge resulted from the breaking of any one rod, which had in it an undiscoverable defect, if such rod had been sufficiently tested to justify the company in relying upon it, then it was not responsible.

We find in the record no evidence that a bridge so constructed would be suitable for the important purpose for which this bridge was intended, and if we were obliged to pronounce upon the subject as a matter of law, without evidence to the contrary, we would say that a railroad bridge designed to carry passenger trains over an important river, so constructed as that the giving way of one single rod would

precipitate it, with its train-load of human beings, into the depths below, was not constructed with due care and skill. We do not say that a railroad bridge so constructed would not be sufficient, as a matter of law. It may be that engineering skill, as practically applied to the construction of railroad bridges, has discovered nothing better. What we do say is that until proof is made of this, we can not say, as the instruction in question seems to propose, that a bridge so constructed and used is sufficient for the purpose it was intended to subserve. We think there was no error in refusing the appellant's instructions.

The last point made by counsel for appellant is that the court committed error in permitting the appellee to introduce evidence in rebuttal showing the condition of the bridge and abutments some time before and at the time of the injury.

As the appellant had introduced evidence as part of its defence tending to show that the abutments and bridge were in proper condition at and shortly before the injury, we think the evidence introduced in rebuttal was competent, and that it was not necessarily a part of plaintiff's original case. It is true, the appellee introduced some evidence as part of his original case tending to show the imperfect and unsafe condition of the bridge, but this did not preclude him from introducing evidence tending to rebut the appellant's evidence on particular points, which tended to show that the bridge and abutments were safe.

We are impressed with the conviction, after reading the evidence in the case, that considering the extent of the injuries actually suffered by the appellee, the damages were excessive, but this was a matter peculiarly within the province of the jury, and, as we find no error in the record, the judgment is affirmed.

Filed Jan. 23, 1885.