No. 13,009.

## THE GRAND RAPIDS AND INDIANA RAILROAD COMPANY *v.* ELLISON.

PLEADING.—*Amended Complaint.*—*Motion to Reject.*—*Discretion of Trial Court.* —Where it is not shown that the trial court abused its discretion in permitting an amended complaint to be filed, no available error can be predicated on its refusal to strike it out.

VERDICT.—*General and Special.*—*Reconcilement.*—If there is any reasonable hypothesis on which the general verdict and a special finding can be reconciled, judgment must follow the general verdict.

RAILROAD.—*Negligence.*—*Passenger.*—*Warning Engineer of Danger.*—A passenger who sees a train on an intersecting road approaching a crossing, is not guilty of contributory negligence because he fails to pull the bell-rope and warn the engineer of the danger.

SAME.—*Incompetent Employee.*—*Knowledge of.*—In an action by a passenger to recover for injuries received in an accident caused by the negligence of a watchman in the employ of the defendant, it is no defence that the defendant had no knowledge of the watchman's incompetency until after the accident.

SAME.—*Carrier and Passenger.*—*Degree of Care.*—A passenger is entitled to a safe transit, and the carrier is bound to the highest degree of reasonable care.

SAME.—*Fireman.*—*Absence from Post.*—It is the duty of a fireman to be at his post of duty when his train is in motion, and where, by his neglect, an accident happens which could otherwise have been averted, the company is liable.

SAME.—*Intersecting Road.*—*Stopping Train.*—It is the duty of an engineer, when approaching the crossing of an intersecting railroad, to stop his engine until it can be ascertained that the crossing is clear.

SAME.—*Line of Duty.*—*Evidence.*—*Opinion.*—Whether an engineer was acting in the line of his duty at a given time is a question to be determined by the jury from the facts, and opinions of witnesses upon a supposable state of facts are not admissible.

SAME.—*Prudence of Employees.*—A railroad company is not relieved of liability because its employees acted with reasonable prudence after discovering a danger which their negligence contributed in bringing about.

From the Allen Superior Court.

*A. A. Chapin* and *W. S. O'Rourke,* for appellant.

*L. M. Ninde, J. Morris* and *J. M. Barrett,* for appellee.

The Grand Rapids and Indiana Railroad Company v. Ellison.

BERKSHIRE, J.—The appellee brought this action against the appellant to recover damages for injuries to his person, which he avers he sustained, without fault on his part, while a passenger on one of the appellant's trains, because of the negligence of its servants and employees.

The appellant answered the complaint by filing a general denial.

The case was tried by a jury and a general verdict returned for the plaintiff, assessing his damages at $500. The jury also returned into court with their general verdict, certain interrogatories, which had been submitted to them, and their answers to the said interrogatories.

The appellant moved the court for judgment on the answers to the interrogatories, notwithstanding the general verdict; this motion the court overruled. The appellant then moved for a new trial, and this motion was overruled, and judgment rendered on the general verdict for the appellee for the damages assessed and for costs.

The errors assigned by the appellant are: (1) Error of the court in overruling its motion to strike the amended complaint from the files. (2) Error of the court in overruling the demurrer to the amended complaint. (3) Error of the court in overruling the motion for judgment, notwithstanding the general verdict. (4) Error of the court in overruling the motion for a new trial.

Granting to the appellee permission to file an amended complaint was within the discretionary powers of the court, and, as the record shows no abuse of discretion, there is no available error because of the action of the court in this regard. Section 391, R. S. 1881; *Durham* v. *Fechheimer*, 67 Ind. 35; *Child* v. *Swain*, 69 Ind. 230; *Town of Martinsville* v. *Shirley*, 84 Ind. 546; *Dewey* v. *State, ex rel.*, 91 Ind. 173.

The second assigned error, that the court erred in overruling the demurrer to the complaint, is not discussed by counsel for appellant, and is, therefore, waived.

The third alleged error, the overruling of the motion for judgment *non obstante veredicto,* is earnestly discussed.

In this State it is well settled, that if there is any reasonable hypothesis whereby the general verdict and the special finding can be reconciled, judgment must follow the general verdict. *Redelsheimer* v. *Miller,* 107 Ind. 485; *Cincinnati, etc., R. R. Co.* v. *Clifford,* 113 Ind. 460.

The answer to interrogatory 21 is in conflict with the answer to interrogatory 36. The former is, that the engineer of the New York, Chicago & St. Louis R. R. Co. did not wickedly and recklessly so run his engine as to cause the collision. The latter answer is, that the wicked and reckless conduct of the said engineer was the primary and proximate cause of the collision.

The one neutralizes the other, but if this were not so, the latter answer states a mere legal conclusion.

In determining whether the answers which the jury return to the interrogatories are to control the general verdict, they must be treated as a special verdict, and therefore the jury must return the facts, from which the court will draw the conclusions of law.

The answers to interrogatories 39 and 40 find that the appellee saw the engine of the N. Y., C. & St. L. R. R. Co. approaching the crossing; that thereafter he could have pulled the bell-rope and signaled appellant's engineer of the approaching danger, and, had he done this, the engineer would have received warning in time to have stopped the train and avoided the accident.

The appellee was not bound to do this. As a passenger it was no part of his province to interfere in any way in the management of the train. Counsel for the appellant cite us to no authority in support of their contention to the contrary.

The answers to interrogatories 5, 7 and 8 find that by virtue of a contract between the N. Y., C. & St. L. R. R. Co. and the appellant the former employed a watchman to

manage the signals and regulate the passage of engines and trains over the crossing where the accident occurred; that if the signals and rules adopted by said companies had been observed and obeyed, the accident would not have happened; that the N. Y., C. & St. L. R. R. Co. paid the watchman.

The answer to interrogatory 6 is, that before the accident the officers and managers of the appellant company had no knowledge of the incompetency of the watchman.

If the watchman was incompetent and his incompetence contributed to the injury, it is wholly immaterial as to whether the appellant's officers and managers were or were not informed thereof. He was an employee of the appellant, and it was responsible for his negligence, whether he was or was not a competent watchman.

The answers to interrogatories 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20 and 22 only go to show that the engineer of the N. Y., C. & St. L. R. R. Co. was guilty of negligence; they do not exclude the idea of negligence, on the part of the appellant's employees.

The answers to interrogatories 1 and 2 find that the appellee was a passenger on a train of cars owned and being run by the appellants, on the morning of December 24th, 1883, and while being thus carried the accident complained of happened, at the crossing of the N. Y., C. & St. L. R. R. Co.'s railroad and the railroad of the appellant.

The appellee, as a passenger, was entitled to a safe transit, and the appellant was bound to the highest degree of reasonable care. *Gaynor* v. *Old Colony, etc., R. W. Co.,* 100 Mass. 208; *Cleveland, etc., R. R. Co.* v. *Newell,* 104 Ind. 264; *Bedford, etc., R. R. Co.* v. *Rainbolt,* 99 Ind. 551; Wood Railway Law, p. 1076, note 2; *Pittsburgh, etc., R. R. Co.* v. *Williams,* 74 Ind. 462.

The answers to interrogatories 3, 4, 23, 24, 25, 26, 28, 30, 31, 32, 33, 34, 35 and 38, find that there had been erected, at the crossing where the accident occurred, some years before, a target, upon the top of which were suspended red and white

balls, to be used as signals in regulating the passage of trains; that it had been mutually agreed between the two companies that when a white ball was displayed on said target, the appellant's engines and trains had the exclusive right to pass over said crossing; that the engineer of the appellant's train brought his engine and train to a full stop 700 feet south of the said crossing before attempting to pass over it; that, after bringing his train to a full stop, he rang the bell and sounded the whistle of his engine, and obtained the white ball signal for his train to pass over the crossing before again putting his train in motion; that, after receiving the signal, the appellant's engine and train had the exclusive right of passage over said crossing to and including the time at which the accident occurred; that, after advancing with his train a distance of 200 feet, the engineer of appellant's train stepped over to the west side of his engine and looked out on the track of the N. Y., C. & St. L. R. R. Co.'s railroad to ascertain if there was any danger from that direction; that, on the east side of the appellant's railroad, approaching from the south, the view from the appellant's engine was obstructed to a point within 250 feet of the crossing; that the side-tracks, engine-house and Fort Wayne station of the N. Y., C. & St. L. R. R. Co. were east, and within one mile of said crossing; that more care was required to avoid approaching engines that might be on that company's railroad from the east than from the west side; that for the safe and proper management of his train, it was necessary that the appellant's engineer should remain on the east side of his engine as he approached the crossing; that it was necessary for the appellant's engineer, as he approached the crossing with his train, to look to the east for approaching trains on the N. Y., C. & St. L. R. R. Co.'s railroad; that, when standing at his post on the east side of his engine, the view of the appellant's engineer of the railroad of the N. Y., C. & St. L. R. R. Co. westward was obstructed until his train arrived at the crossing; that the appellant's engineer had no information that

the engine colliding with his train was nearing the crossing; that the engineer and servants of the appellant obeyed the rules and signals adopted for the passage of engines and trains over the said crossing.

These facts are not inconsistent with negligence on the part of the employees of the appellant, contributing directly to the accident.

It is a fact well known that all engines hauling passenger and freight trains carry a fireman as well as an engineer, and when the engine is in motion the post of the fireman is on the left side of the cab, and that of the engineer on the right.

If there was a fireman on the appellant's engine on the morning of the accident, it was his duty when his train was in motion, and especially so when nearing a railroad crossing, to be at his post and on the lookout.

It is evident from the answers to the interrogatories that, had the fireman been at his post in the performance of duty, he could and would have observed the approaching engine on the other road, and informed the engineer in time for him to have stopped the train and prevented the accident.

This state of facts we must assume in considering this motion. But this is not all.

The answers to the interrogatories show that the appellant's engineer stopped his engine 700 feet from the crossing, and then started on, not stopping again until the accident occurred.

This was not only negligence, but the grossest kind of negligence. It was the duty of the engineer to move his train to a point near the crossing and bring it to a full stop, and then ascertain whether there was a train on the other railroad in sight or approaching said crossing; if not, then he had the right to move his train across, otherwise it was his duty to hold his train until he could pass over in safety. Section 2172, R. S. 1881.

Had the engineer done his duty in this particular, it is very clear the accident would not have happened.

The speed at which the appellant's train approached the crossing is not given in the answers of the jury. For the purposes of this motion, we may presume that its speed was at least the ordinary speed at which passenger trains are moved. But, without any presumption, the failure of the engineer to stop his engine near the crossing and to inform himself whether or not there were approaching trains or engines on the other railroad, and in the vicinity of the crossing, was gross negligence, contributing directly and proximately to the injury.

The answers to interrogatories twenty-eight and thirty-four seem to be inconsistent.

The answer to twenty-eight is, that on the west side of the appellant's engine, approaching from the south, the view of the other railroad track was obstructed to a point within two hundred and fifty feet of the crossing; the answer to thirty-four is, that the view was obstructed to the crossing.

If the view was obstructed, then there was a greater necessity for stopping the train at the crossing or near thereto before attempting to pass over it.

The answer to the twenty-sixth interrogatory finds that appellant's engineer, when within five hundred feet of the crossing, passed over to the west side of his engine and looked out on the railroad of the New York, Chicago and St. Louis Railroad Company to see if there was any danger; the answer to interrogatory twenty-seven finds that there was an approaching engine on the other railroad at that very time.

A very significant circumstance in this connection is, that the jury do not find whether the engineer saw the approaching engine or not.

The court below was clearly right in overruling the motion for a judgment upon the answers to the interrogatories.

This leads us to the error assigned because of the overruling of the appellant's motion for a new trial.

The third reason for a new trial is, that the court refused

to permit the appellant to ask Patrick O'Rourke, a witness, the following question:

"Mr. O'Rourke, suppose that an engineer in charge of a passenger train stops at a distance of 695 feet from the railroad crossing, where the target crossing is in full view, comes to a full stop, whistles for the signal, obtains the signal which gives him the right to pass over the crossing; that at that point there is a cut which prevents his seeing any great distance upon either side of the track that he is on; that he then starts up his engine at the rate of between six and eight miles an hour; when he gets 200 feet nearer to the crossing he comes out of the cut so that he could see on the west (if he is going north); he then steps across to the left-hand side and looks to the west; he could see four or five hundred feet to the west; there is no engine in sight approaching the crossing upon the other track; upon the right-hand side the view is obstructed for 200 feet farther, so that he could not see the track east; as he steps back to his post on the right-hand side to his throttle valve and apparatus with which he manages his engine, and when he gets 200 feet further he looks to the east to see if there is any danger there, discovers none, and during all this time he keeps the target in full view; a signal has been given which gives him the right to cross, a watchman being at the target; he then drives his engine on to the crossing. I would ask you whether, under such circumstances, you would say that an engineer was acting within the line of his duty under such circumstances?"

This was clearly an improper question, and the court did right in refusing to allow the witness to answer it.

It is sufficient to say that, as to whether the engineer was acting in the line of his duty on the occasion in question, was a question to be determined by the jury from the facts proven, and not from the opinions of witnesses given upon a supposable state of facts.

The sixth reason for a new trial is the giving of instructions one and two, requested by the appellee.

These instructions are long, and we do not, therefore, set them out in this opinion.

We have carefully examined them and are satisfied that they state the law correctly as to the duties and responsibilities of railroad companies as carriers of passengers.

The court followed the well considered cases in this court of *Pittsburgh, etc., R. R. Co.* v. *Williams, supra; Bedford, etc., R. R. Co.* v. *Rainbolt, supra; Cleveland, etc., R. R. Co.* v. *Newell, supra.*

We are of the opinion that the instructions were applicable to the case made by the evidence.

The seventh reason for a new trial is, that the court erred in refusing to give instruction three, requested by the appellant. As this instruction is short, we set it out:

"3. If you find that the plaintiff was injured through the negligence of any one or more of the employees of what has been called the Nickel Plate Railroad Company, and that said employee or employees were not in the employment of the defendant nor under its control, and that the defendant's servants had no reasonable cause, under all the circumstances, to anticipate that the said employees of the Nickel Plate Company would be negligent, and that defendant's employees acted reasonably prudent themselves as soon as they became aware of the impending danger to avoid the same, then your verdict should be for the defendant."

This instruction was properly refused. It asks the court to say to the jury that if the appellant's employees were reasonably prudent after they discovered impending danger, the verdict of the jury should be for the appellant, though the negligence of the said employees may have contributed directly to bring about the danger that was impending.

But again, the instruction was not applicable to the case as made by the evidence.

There is a further reason why the judgment should be af-

firmed.    The record shows that substantial justice has been done.

As the foregoing are the only reasons for a new trial discussed by counsel for appellant, we do not notice the others.

We find no error in the record for which the judgment should be reversed.

The judgment is affirmed, with costs.

Filed Feb. 1, 1889.