THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v.* GRAY.

[No. 17,966.   Filed April 6, 1897.   Rehearing denied June 24, 1897.]

PLEADING.—*Complaint.—Negligence.— Railroad Crossings.—* In an action for personal injuries, based upon the negligence of defendant, the fact that a particular act of negligence prohibited by statute is included in the acts constituting the negligence does not confine and limit the theory of the complaint to the statutory offense charged.  *pp. 270, 271.*

SAME.—*Complaint.—Railroad Crossings.— Violation of Statute.—*In an action for personal injuries against a railroad company, based upon the negligence of such company, in violating section 2293, Burns' R. S. 1894 (2172, R. S. 1881), prescribing a penalty for a train to approach the crossing of another railroad track without stopping and ascertaining that there is no other train or locomotive in sight, need not negative the exception provided by section 5156, Burns' R. S. 1894, where there is a system of interlocking automatic signals.  *pp. 271, 272.*

SAME.—*Negligence.—Breach of Statutory Duty.—*Where a breach of a statutory duty is alleged, and exceptions are found in the statutory declaration of duty, the pleader must show that the breach is not included in the exception.  But if the exception is stated in a sub-

The Cleveland, etc., Railway Company *v.* Gray.

sequent clause or section of the statute, or if it is declared in another statute, then such exception should be shown by way of defense to the action. *p. 272.*

SAME.—*Complaint.—Answer.*—Where a complaint discloses a *prima facie* cause of action under a statute, it is for the defendant, by way of answer, to show that the plaintiff should not recover, notwithstanding the allegations of the complaint. *p. 272.*

EVIDENCE.—*Introduction of Pleading Filed by Adverse Party.*—A party who introduces in evidence a pleading filed by the adverse party, but subsequently withdrawn, may explain and rebut portions thereof which are unfavorable to him. *pp. 274, 275.*

RAILROAD CROSSINGS.—*Signal Lights.*—The fact that signal lights, in a railroad crossing signal system, were obscured from view by a car standing across defendant's track did not excuse defendant company from the duty of stopping its trains to ascertain whether or not the crossing was clear. *p. 275.*

SAME.—*Obstruction of Signal Lights.*—That the view of the crossings of two railroads, and of the signals designed to warn a train on one track of the presence of a train on the other was obscured by an electric light maintained by the city will not relieve the company from liability for a collision between a train standing upon the crossing and another train approaching on the other track, as it is bound to exercise care commensurate with the surroundings. *pp. 275, 276.*

SAME.—*Duty of Managers of Train Approaching a Crossing.*—When means are not provided by which a collision at a railroad crossing is rendered impossible, the rule to stop, look, and listen is not less imperative on a train approaching à crossing of another railroad than upon a traveler about to approach a railroad crossing. *p. 277.*

EVIDENCE.—*Nonexpert.—Opinion.*—A nonexpert witness who has observed the condition of a person may express his opinion as to whether such person was sick or not, where it is impossible for such witness to present to the jury all of the facts upon which the opinion is based. *pp. 277, 278.*

SAME.—*As to Earning Capacity of Plaintiff as a Physician.—Damages.*—Evidence as to plaintiff's earning capacity as a physician is admissible in an action for personal injuries, as a means of enabling the jury to arrive at the proper measure of damages. *p. 278.*

From the Wayne Circuit Court. *Affirmed.*

*Elliott & Elliott* and *John T. Dye,* for appellant.

*Marsh & Jaqua, John S. Engle, M. G. Parry* and *Brown & Brown,* for appellee.

HOWARD, J.—The appellee recovered damages in the sum of five thousand dollars for injuries alleged to have been caused by the negligence of appellant.

The first paragraph of the complaint alleges that the appellant was, on May 27, 1895, the owner and operator of a line of railway extending east and west through the city of Winchester, Indiana; that said line is crossed in said city by a line of railway of the Grand Rapids and Indiana Railroad Company, which runs north and south; that just north of the appellant's line, and west of the Grand Rapids line the appellant maintained a small wooden building about ten by eighteen feet, which is used as a telegraph and signal office, and that it kept an agent and telegraph operator in said building; that from said building, by a system of levers, the appellant also operated a system of targets and signals to notify its agents and servants when the said crossing was open for its trains to pass; that when a target was swung across the main track of either of said lines it meant that the crossing was not clear for the company across whose line the target was swung to pass. It is also alleged that said building was used as the office of the Western Union Telegraph Company, and persons were invited thereto for the purpose of receiving and sending messages and transacting business with said telegraph company.

The complaint then proceeds as follows:

"And plaintiff says that on the 27th day of May, 1895, the plaintiff, in company with one Albert F. Huddleston, was lawfully at said small wooden building for the purpose of transacting business with the said Western Union Telegraph Company, and for the purpose of procuring the said agent and servant and telegraph operator of the defendant so employed and engaged aforesaid, to send a message and telegram, and the plaintiff avers that while the plaintiff and

said Huddleston were thereat and in said small wooden building aforesaid, as they had the lawful right to be, and before they had finished the transaction of said business, a freight train on said Grand Rapids and Indiana Railroad was occupying said crossing, and was standing on the main track of said Grand Rapids and Indiana Railroad across said railroad crossing, fully occupying the same; and while the target was closed against the defendant (indicating that the Grand Rapids and Indiana Railroad Company had the exclusive right to use and occupy said crossing) the engineer, agents, and servants of the defendant who had control of, and were running a locomotive and a freight train from the east to the west, on and over the defendant's railroad, did then and there carelessly and negligently and unlawfully run said locomotive so attached to said train of freight cars, upon and across the track of the said Grand Rapids and Indiana Railroad Company at said crossing while the said freight train on said Grand Rapids and Indiana Railroad was so occupying the crossing aforesaid, and before the same had passed over said crossing, and while the same was standing still on said crossing. And the plaintiff says that the engineer who had charge of said locomotive, and was running the same so attached to said freight train, in approaching said crossing from the east, aforesaid, going to the west, did unlawfully, carelessly and negligently run said locomotive and train of cars upon and across the said track of said Grand Rapids and Indiana Railroad Company without first coming to a full stop before running his said locomotive upon and over the same, and without first ascertaining that there was no other train or locomotive in sight approaching and about to pass over said track and crossing or occupying the same. That in so carelessly and

negligently running said locomotive and train of cars upon and over said crossing in the manner aforesaid, and while said crossing was so occupied aforesaid, the said locomotive came in contact with said train of cars, and in contact with said car so standing on, over and across said crossing on the said Grand Rapids and Indiana Railroad with great force, and violently pushed the same sidewise and to the westward over and against the said small wooden building so located aforesaid, and occupied by the plaintiff in the manner aforesaid," etc., crushing the building and overwhelming appellee in the ruins and thus causing the injuries complained of.

A demurrer was overruled to this paragraph of the complaint, and this ruling is the first error assigned and discussed by counsel.

Because it is alleged in the complaint that appellant's train ran upon the crossing "without first coming to a full stop," counsel argue that it is thereby shown that the complaint is based upon section 2293, Burns' R. S. 1894 (2172, R. S. 1881), which section of the statute prescribes a penalty for so approaching a crossing without stopping and ascertaining that there is no other train or locomotive in sight, approaching and about to pass over such other track. And counsel say that if such is the theory of the complaint the pleading is insufficient for failing to allege, in the language of that statute, that each of the railroads is one "upon or over which passengers are or may be transported."

To this it may be answered, in the first place, that the allegations of negligence as to appellant's approach to the crossing are much broader than counsel indicate. Not only is the failure to stop alleged, but the general allegation is made that the appellant "did then and there carelessly and negligently and

unlawfully run said locomotive so attached to said train of freight cars, upon and across the track of the said Grand Rapids and Indiana Railroad Company at said crossing while the said freight train on said Grand Rapids and Indiana Railroad was so occupying the crossing aforesaid, and before the same had passed over said crossing, and while the same was standing still on said crossing." Because the particular act of negligence prohibited by the statute is included in the sum total of negligent acts charged against appellant, it does not follow that the theory of the complaint is thereby confined and limited to the statutory offense charged. See *Coulter* v. *Great Northern, etc., R. W. Co.* (N. D.), 67 N. W. 1046; *Chicago, etc., R. R. Co.* v. *Dillon*, 123 Ill. 570, 15 N. E. 181.

Another reason urged against the sufficiency of the first paragraph of the complaint, is that "it does not allege that the crossing of the appellant's line and the Grand Rapids line was not provided with interlocking switches, or 'works or fixtures,' which excused the companies from stopping their trains at such crossings."

The basis of this contention is that, while the statute above cited requires trains before reaching the crossing of another road to come to a stop and look out for trains on the other road, yet that, by section 5156, Burns' R. S. 1894 (Acts 1883, p. 55), it is provided that where roads erect "a system of interlocking or automatic signals," rendering it safe for trains to pass over on either road without stopping, then the law as to stopping and looking out for trains at the intersection will not apply. In the case at bar there were no interlocking switches, and the complaint was drawn without reference to the statute relating to such switches. We do not think this was error, even

if the charge were merely the violation of a statutory obligation, which, as we have seen, it was not. Where a breach of a statutory duty is alleged, and exceptions are found in the statutory declaration of duty, the pleader must show that the breach is not included in the exception. But if the exception is stated in a sub-sequent clause or section of the statute, or if it is declared in another statute, then such exception should be shown by way of defense to the action. *Colson* v. *State*, 7 Blackf. 590; *Russell* v. *State*, 50 Ind. 174. And if a complaint discloses a *prima facie* cause of action under a statute, it is for the defendant, by way of confession and avoidance or otherwise, to show that the plaintiff should not recover, notwithstanding the allegations of his complaint. *W. U. Tel. Co.* v. *Scircle*, 103 Ind. 227.

But the interpretation given by counsel to the statute under discussion could not be correct in any event. If two railroads provide interlocking switches so that it may be safe for the trains of each to pass over the common crossing without stopping, it is true that the statute makes it "lawful for the engines and trains of such railroad or railroads to pass over said crossing without stopping." The reason for that, however, is, that in case of such interlocking switches, when one train is upon the crossing the other cannot go upon it. The statute does not intend so absurd a thing as to authorize one train to run into another whenever there is an interlocking switch at the crossing. On the contrary, the very fact of there being an interlocking switch at the crossing renders it impossible for one train to run into the other. The offending train would find itself off its own track if it should attempt such a feat. But when the switch is locked in favor of the crossing train, and the signal shows this fact, then, of course, the train may run through without the pos-

sibility of intersecting a train upon the other road; and hence the statute, in such case, makes it lawful for the train to cross over without stopping.

In like manner, a train about to meet another, and not having the right of way, must, in general, turn in upon a switch and wait until the other train passes. But, in case the road has a double track, each train may run on without stopping. Nevertheless, the mere fact that a road is double-tracked would not excuse employes who should run their train by switch from one track upon the other, and so crash into a train rightfully on the other track. The observance of a law is not shown by following its letter and violating its spirit.

So here, the rule for stopping is made in order to avoid collision, but the interlocking switch makes collision impossible. In such case, the reason for the rule ceases, and the law therefore takes away the requirement to stop, which would then be not only a useless but a wasteful delay. If, however, those in charge of an approaching train should see the signals indicating that the switch was locked against them, instead of for them, they would, for their own safety, and without any law to compel them to do so, except the law of self-preservation, most certainly stop their train. Indeed the very fact that in this case there was a collision shows that there could be no interlocking switches at the crossing, or at least that no such switches were in use. Had there been an interlocking switch at the crossing it would have been open to the Grand Rapids train, which was upon the crossing; and the appellant's train, instead of running against the Grand Rapids train, would have run off the track.

It is next contended that the court erred in overruling the motion for a new trial.

Vol. 148—18

Under this assignment counsel first argue that the verdict is contrary to the evidence. This argument is based on statements found in a special answer filed by appellant, but afterwards withdrawn. The answer so withdrawn was introduced in evidence by appellee, and counsel for appellant insist that as the appellee thus made the answer a part of his own evidence, he is bound by all the statements therein contained. This is hardly correct. That a withdrawn pleading may afterwards be introduced in evidence by the adverse party, is not doubtful. Such evidence, however, although introduced with the view that it shall be treated by way of admissions by the pleader, is nevertheless open to explanation, and is not to be taken as conclusive against the pleader unless it amounts to an estoppel. It is to be remembered, besides, that, in case a pleading is so introduced in evidence, "all the statements of the whole pleading are to be taken together, what makes for the pleader as well as what makes against him." As in the case of other evidence, such pleadings "go to the jury for what they may be worth." *Boots* v. *Canine*, 94 Ind. 408; *Baltimore, etc., R. W. Co.* v. *Evarts*, 112 Ind. 533. And see *Mott* v. *Consumers Ice Co.*, 73 N. Y. 543; and 1 Greenl. Ev. (15th ed.) section 201. But if such admissions may be explained as against the pleader, still less is the party introducing the pleading bound by all therein contained. "Ordinarily," as said in *Mott* v. *Consumers Ice Co.*, *supra*, "a party is not bound by the admissions of his adversary, of which he gives evidence, but is at liberty to use it so far as it makes in his favor, and to disprove the residue—that is, he is not estopped by it. The fact that the admission is in a pleading does not change its character or create an estoppel."

Many of the averments of the answer so introduced were contradicted by other evidence before the jury,

and it was for the jury to settle the conflict thus raised. The answer states as a conclusion that there were such fixtures and signals established at the crossing as rendered it safe for engines and trains to pass over without stopping. But there was evidence that the tracks of each road were solid over the crossing, and that there was simply provided a system of signals to show whether the crossing was clear for one road or the other. There was nothing in the situation therefore which authorized a train to pass over the crossing when, as in this case, the signal showed that the crossing was not clear. Even the answer admits that at the time of the accident "said signal was turned and shut across the defendant's right of way," showing that appellant's train had no right to pass.

It is said that the answer shows that it was impossible for the employes on appellant's train to see the signal light in its crossing signal system because the same was obscured by a car of the Grand Rapids train standing across appellant's track. That was certainly a possibility whenever a train of the other road stood upon the crossing, and to be guarded against accordingly. No better reason need be given to show that appellant's train should have come to a stop in order to ascertain for a certainty that the crossing was clear. A like reply may be made to the statement that a lantern placed on a platform by employes of the Grand Rapids train was mistaken for a switch light east of the crossing, and thus gave the employes on appellant's train the impression that the crossing was clear.

As a further reason to show why appellant's employes did not see the Grand Rapids train on the crossing, it is averred in the answer that at some time previous the city of Winchester, over the protest and objection of appellant, had placed an electric light ten feet east of the crossing and near to the point where a

public street crosses appellant's track, and that the city "continuously operated said light at said point over the objection" of the appellant. "That upon the night of the alleged injury said light was lighted and in operation by said city. That it hung a short distance above the level of an ordinary freight car;" and that by reason of said light the view of the crossing and of the signals was obscured. It thus appears that appellant knew of the light, and was hence required to take the greater precaution in passing over the crossing. Care must always be exercised in proportion to the known dangers to be avoided. Had appellant's train come to a stop when near the electric light, the Grand Rapids train would have been discovered. Without any regard to the statutory requirement, the obscurity caused by the electric light made it a matter of prudence to come to a stop before taking such a plunge into the shadows over the crossing of another railroad.

The proximate cause of the accident and injury to appellee was not any action on the part of the city in placing an electric light at a street crossing, nor any action of the employes of the Grand Rapids road, who rightfully occupied the crossing with their train, but the negligence of the employes of appellant's train in approaching the crossing without first ascertaining that the way was clear. There was nothing in the way that they were not required to guard against, even if the statute had not prescribed that the train should come to a full stop before passing over the crossing.

In *Grand Rapids, etc., R. R. Co.* v. *Ellison,* 117 Ind. 234, the engineer had stopped his train 700 feet from the crossing of another railroad, and then started on, not stopping again until the accident occurred. The court said: "This was not only negligence, but the

grossest kind of negligence. It was the duty of the engineer to move his train to a point near the crossing and bring it to a full stop, and then ascertain whether there was a train on the other railroad in sight or approaching said crossing."

The duty of those in charge of a railroad train to take care to avoid collision with a train on another road cannot be less than the duty of a traveler on the highway to avoid collision with a train at a railroad crossing. If means are not provided by which a collision is rendered impossible, then the rule to stop and look and listen cannot be less imperative when two trains are liable to crash together than it is when one train is liable to crash into the traveler's vehicle.

As to the traveler's duty in such case, it was said in *Smith* v. *Wabash R. R. Co.*, 141 Ind. 92, citing many cases: "In attempting to cross, the traveler must listen for signals, notice signs put up as warnings, and look attentively both ways for approaching trains, if the surroundings are such as to admit of that precaution. If a traveler by looking could have seen an approaching train in time to avoid injury, it will be presumed in case he is injured by collision, either that he did not look, or, if he did look, that he did not heed what he saw; such conduct is negligence *per se.*" It could not be contended in the case before us, and it is not so contended, that if the engineer had moved his train to a point near the crossing and then brought it to a full stop, as said to be necessary in *Grand Rapids, etc., R. R. Co. v. Ellison, supra,* he could not have seen the train standing before him on the other track, and so have avoided the collision.

Objection is made to certain evidence given by appellee's wife as to the condition of his health. We do not find that the question or answer complained of

was incompetent. The rule as to evidence given by a nonexpert witness in such a case is well stated in *Carthage Turnpike Co.* v. *Andrews*, 102 Ind. 138: "He must, in all cases, so far as possible, state the facts upon which he bases his opinions. When the case is one in which all the facts can be presented to the jury, then no opinion can be given, because the jury are as well qualified as the witness to form a conclusion. But there are cases where the witness cannot put before the jury, in an intelligible and comprehensible form, the whole ground of his judgment or opinion. When questions as to the conditions of the mind and body are the questions in issue, there are often many things in the acts, deportment, and appearance of the party which create a fixed and reliable judgment in the mind of the observer that cannot be conveyed in words to the jury. That a person appears to be sad or sick may well be known by observation, and yet there is no way to describe the appearance except by the words that necessarily embody the conclusion reached by observation. In such cases, if the witness states that he is acquainted with, has had opportunity to, and has observed the party, this, it has been held, is sufficient to render the witness competent to state the condition of the party mentally or physically." Under the rule so stated we think the admission of the evidence in question was not error.

Neither was there error in admitting evidence as to appellee's earning capacity as a physician. Such evidence was proper as a means of enabling the jury to arrive at the proper measure of damages. *City of Logansport* v. *Justice*, 74 Ind. 378, 39 Am. Rep. 79.

Complaint is also made of instructions given, and of the refusal to give other instructions asked. What we have said in considering the first paragraph of the

complaint shows that the court did not err in this respect.

We think the case was fairly tried.

Judgment affirmed.

MONKS, J., took no part in the decision of this case.