McDougal v. The State.

No. 10,794.

McDOUGAL v. THE STATE.

CRIMINAL LAW.—*Murder.*—*Insanity.*—*Presumption.*—*Evidence.*—*Instruction.* —*Burden of Proof.*—Where the question of the prisoner's sanity is in issue, upon a trial for murder, it is error to instruct the jury that "The law presumes sanity in all cases, and the burden of overthrowing the presumption is upon the defendant; but it is not necessary that this presumption should be overthrown by a preponderance of evidence. If the evidence given by the defendant has been sufficient to raise a reasonable doubt of the defendant's sanity, then the general question of his sanity is presented, and then, if upon the whole evidence on both sides a reasonable doubt exists of his sanity, he is entitled to the benefit of that doubt." If the doubt is created solely by the State's own evidence, the defendant is equally entitled to an acquittal.

SAME.—*Instructions.*—An erroneous instruction is not cured by another which contradicts it and is correct.

From the Clark Circuit Court.

D. C. Anthony and M. Clegg, for appellant.

F. T. Hord, Attorney General, W. B. Hord and F. B. Burke, Prosecuting Attorney, for the State.

ZOLLARS, J.—Upon an indictment charging murder in the first degree, appellant was tried, convicted and sentenced to suffer death. The facts in the case, as shown by the evidence on the part of the State, are substantially as follows: Appellant, with his wife and children, resided in Jeffersonville; on the — day of September, 1882, the wife of appellant was away from home at work; having been absent for a while in the evening, appellant returned at about 8 o'clock; brought an ax into the house, and, holding it up, said to his daughter, a girl of fourteen: " Look at this; this is what I am going to kill your mother with when she comes home." He had been making threats that he would kill his wife for four or five years. He left the ax in the house and was absent again until 9 o'clock. Upon his return, the daughter having retired, he spent an hour in conversation with her. Nothing seems to have been said in this conversation in relation to his wife..

McDougal *v.* The State.

She returned home at about 10 o'clock.  Upon her return appellant asked her why she had not waited for him to accompany her to Louisville.  She answered, "I did wait until 6 o'clock, and thought you was not coming."  He said "You were ashamed to go with me."  To this she answered, "Any one would be ashamed to go with you in those rags."  This conversation was heard by a person in another part of the house, who states that immediately thereafter he heard a blow.  The daughter seems to have been asleep when the mother returned.  When she awoke, the mother was sitting upon a chair near her bed.  Appellant said to his wife, "Shut your mouth."  The wife answered, "I won't do it until you shut yours."  He replied, "I'll make you."  Upon saying this he got the ax and struck the wife a blow upon the head. The daughter tried to get the ax from him, but did not succeed.  He struck the wife with it again, before the daughter ran into the yard.  Persons from another portion of the house arrived at the door in a short time, and saw him inflicting additional blows.  He met them at the door and told them that he had killed his wife with an ax, and invited them in to see for themselves.  Afterwards he went into the yard with one of his small children, and tried to quiet it.  He asked those present to cut his head off with the ax and bury him beside his wife.  After a short time he sent for a policeman, waited until he arrived, and told him he wanted to die as soon as possible.  On the following morning he told a policeman at the jail that he had killed his wife, and where the ax would be found.

Under the proper pleas, as required by sections 1763 and 1764, R. S. 1881, the defence was based upon the alleged insanity of appellant.  Two physicians were called by appellant to testify upon this question.  One of them testified that he could not say that appellant was of unsound mind, but could say that he has but very little intellect.  The other testified that in his opinion appellant was not of unsound mind.  Appellant was a witness in his own behalf, and testified that he

and his wife had been slaves; were married soon after they became free; that they had no quarrels, and that no jealousy existed on the part of either; that he did not recollect distinctly what took place on the night his wife died; that he was not afraid to die, and thought he would go to a better world.

The error assigned in this court is the overruling of the motion for a new trial. The serious question presented by the record is the giving of the seventeenth instruction by the court. The portion of which complaint is made is as follows: "The law presumes sanity in all cases, and the burden of overthrowing the presumption is upon the person who alleges insanity; but it is not necessary that such presumption should be overthrown by a preponderance of evidence; and, in this case, if the evidence given by defendant has been sufficient to raise in the minds of the jury a reasonable doubt of his sanity, then the general question is presented to the jury whether or not the crime was committed by him while responsible for his acts; and then, upon the whole evidence in the case as introduced by both the defendant and the State, if a reasonable doubt exists as to defendant's sanity at the time he committed the act, he is entitled to the benefit of the doubt." This instruction starts out with the proposition, substantially, that unless the defendant had, by affirmative evidence, created a reasonable doubt as to his sanity at the time the crime charged was committed, that question was not before the jury for consideration. This, we think, was erroneous. One of the averments, and one of the essential elements in the offence of murder, is malice. Murder is said to be committed when a person of sound mind and discretion unlawfully killeth any reasonable creature in being, and under the king's peace, with malice aforethought, either express or implied. 3 Coke Inst. 47; 4 Bl. Com. 195; Chit. Crim. Law, 724.

Malice is just as essential to the offence as is the killing, and the State is called upon to prove the one as clearly as the

other.   It is not always possible or necessary to prove malice by the same kind of evidence.   It may often be inferred from the killing and surrounding circumstances, in which case it is said to be implied, but it is nevertheless proven.   There can be no criminal intent when the mental condition of the accused is such that he is incapable of forming one; and hence it must appear from the evidence beyond a reasonable doubt that, at the time of the commission of the offence charged, the mental condition of the defendant was such that he was capable of forming an intent.   There is a legal presumption that all persóns are sane.   In a case like this that presumption operates as evidence in behalf of the State; and, if the other evidence on the part of the State does not overthrow it, the State may rest upon it as sufficient.  · The defendant may overthrow the evidence on the part of the State, or so weaken it by counter proof, that, upon the whole evidence, the issue may not be established in favor of the State beyond a reasonable doubt. *Polk* v. *State*, 19 Ind. 170; *Bradley* v. *State*, 31 Ind. 492; *Snyder* v. *State*, 59 Ind. 105; *People* v. *Garbutt*, 17 Mich. 9; *State* v. *Bartlett*, 43 N. H. 224; *Ogletree* v. *State*, 28 Ala. 693; *State* v. *Crawford*, 11 Kan. 32.

· In a case like this, where the plea of insanity is in, the question of the sanity or insanity of the accused, is before the jury, and is to be passed upon by them, whether the defendant has introduced evidence upon the subject or not.   It is the duty of the jury to consider not only the evidence directed specially to the question of the mental condition of the accused, but also all circumstances developed by the evidence bearing upon that question.   In some cases the circumstances attending the killing, and the whole evidence on the part of the State, may be such as to completely overthrow the presumption of sanity without any evidence at all on the part of the defendant.

How much weight the conduct of the accused and the circumstances attending the killing should have, as bearing upon

the question of his sanity, we do not decide, but we think they were such that he had the right to have them considered by the jury, whether he introduced any evidence or not. We can not know what weight the jury may have given to the testimony on the part of the defendant. Unless they regarded it as sufficient of itself to raise a reasonable doubt of his sanity, they could not, under this instruction, consider that question. Other instructions, perhaps, stated the law upon the subject correctly, but the seventeenth was not withdrawn, and taken together they would tend to mislead rather than enlighten the jury. An erroneous instruction in a criminal case can not be corrected by another which states the law correctly, unless the erroneous instruction be thereby plainly withdrawn from the jury. *Kingen* v. *State*, 45 Ind. 518; *Howard* v. *State*, 50 Ind. 190. If instructions are inconsistent with each other, so that the jury are left in doubt or uncertainty as to the law applicable to the facts of the case, the judgment will be reversed. *Kirland* v. *State*, 43 Ind. 146 (13 Am. R. 386).

. As the judgment must be reversed on account of error in giving the seventeenth instruction, we need not consider other questions discussed by counsel.

The judgment is reversed, with instructions to the court below to grant a new trial.