Filed Dec. 17, 1885.

No. 11,095.

The Cleveland, Columbus, Cincinnati and Indianapolis Railroad Company v. Newell.

Railroad.— *Negligence.— Broken Rail.— Presumption.— Burden of Proof.—* Where a car, by the breaking of a rail, is thrown from the track, resulting in injury to a passenger, a presumption of negligence arises against the railroad company, which it must rebut by clear and explicit proof

The Cleveland, Columbus, Cincinnati and Indianapolis R. R. Co. v. Newell.

that the accident could not have been avoided by the utmost skill and care, and as to showing the facts essential to negative such presumption the burden is on the company.

SAME.—*Breaking of Successive Rails at Same Place.*—*Instruction to Jury.*—In an action against a railroad company to recover damages for an injury caused by an accident resulting from a broken rail, an instruction to the jury, that if they find from the evidence that such rail had been put down in place of another which had broken the same morning at the same place, they might consider this fact in determining whether the rail which caused the accident was a good one, and whether it was properly and carefully put down, is proper.

SAME.—*Instruction as to Measure of Damages.*—*Province of Jury.*—In an action for personal injury, an instruction to the jury that in estimating damages they may consider past and future suffering, the value of time lost, or likely to be lost, whether the injury is likely to be permanent or not, and its probable effect upon the future health of the party, and upon all the facts ascertain the extent of the injury and award such damages as in their judgment " will compensate, so far as money can," for such injury, is not erroneous as invading the province of the jury.

EVIDENCE.—*Personal Injury.*—*Expressions of Pain.*—Where it becomes important to illustrate the physical or mental condition of a person, either at the time an injury is received, or from thence to the time of an inquiry as to its nature and effect, expressions of present existing pain or malady, and of its locality, whether made at the time the injury is received or subsequent to it, are admissible in evidence, regardless of the person to whom they are made.

SAME.—*Statements to Physician after Commencing Action.*—*Expert.*—As the basis of his opinion, a physician may testify to statements made by a patient in relation to his symptoms and condition, both past and present, when received during and necessary to an examination with a view to treatment, or when necessary to enable him to give his opinion as an expert, although such statements are made after the patient has commenced an action to recover damages for the injury.

SUPREME COURT.—*Erroneous Instruction, if Harmless, will not Authorize Reversal.*—A judgment will not be reversed upon an erroneous instruction, when it affirmatively appears from answers to interrogatories that such instruction did not influence the jury in making their verdict.

From the Marion Superior Court.

*H H. Poppleton, A. C. Harris* and *W. H. Calkins,* for appellant.

*B. Harrison, C. C. Hines, W. H. H. Miller, J. B. Elam, J. W. Gordon* and *S. M. Shepard,* for appellee.

MITCHELL, J.—This action was brought by Lyne S. Newell against the Cleveland, Columbus, Cincinnati and Indianapolis Railway Company, to recover for alleged injuries to his person, suffered while being carried as a passenger from the city of Indianapolis to Bellefontaine, Ohio. When near the place of destination, the coach in which he was seated was thrown from the track in consequence of the breaking of a rail over which it passed. Whether the rail broke because of the prevailing cold weather, or from defects inhering in it or in the roadway at that point, or from the defective manner in which the rail was adjusted in the track, were controverted questions.

The jury returned, in answer to special interrogatories, that the defendant was in fault in not having placed the rail, the breaking of which resulted in the accident, in proper position; that the fish-plates which should have held it in place were not securely bolted, and that the rail itself was defective from wear. They also returned that the road-bed at the place where the broken rail was found was not in every respect in good condition. Other interrogatories were submitted and answered, but, except as already stated, the answers impute no neglect to the defendant.

It is contended that neither the general verdict nor the answers to interrogatories, so far as they inculpate the defendant, are supported by the evidence.

Without detailing the evidence to any extent, it may be sufficient to say, that it at least leaves in some doubt the question of the condition and fitness of the rail which broke. Moreover, the fact that another rail was found broken, only several hours before, at the same place, gave room for an inference that there may have been some defect in the roadway at that point.

In respect to all these matters it was incumbent on the defendant to remove all reasonable inferences of neglect by clear and explicit proof. That the coach was thrown from the track was of itself sufficient to raise a presumption of

negligence against the defendant. Public policy requires of the carrier in such cases, that it shall affirmatively show that it had taken all usual and practical precautions, as applied to the careful and capable management of passenger railways, to maintain its track, roadway and appliances for carrying in a safe condition. While its obligation does not rise to the degree of warranting the safety of its track and roadway, the law nevertheless exacts that when an injury occurs to a passenger by an occurrence so unusual and so perilous to human life, it shall make it appear that the utmost practical care and diligence had been observed, and that no degree of care usually and practically applicable to the careful management of like railways would have discovered the defect which probably caused the accident, and thus prevented its occurrence. *Bedford, etc., R. R. Co.* v. *Rainbolt*, 99 Ind. 551.

The investigation necessarily involved an inquiry into the fitness and condition of the particular rail, the breaking of which was the immediate cause of the accident. The condition of the roadway at that point also became a proper subject of inquiry. If, in the course of the investigation, facts were developed which left the questions of the condition of the roadbed, or whether the rail was properly adjusted in the track, or whether it was defective from wear, involved in doubt, then, however satisfactory the proof of general diligence may have been, the inference of negligence with respect to the immediate cause of the accident may still have remained.

While it may be conceded that the evidence fully established the defendant's general diligence in the maintenance of its track and appointments, it can not be denied that the rail which was found broken had been taken out of the track before the accident at a point near by because of its want of exact uniformity in height with another to which it was matched. Another rail had broken at the same place on the morning of the accident, and this rejected rail had been put in its place. It can not be said that its fitness for use was in

268        SUPREME COURT OF INDIANA,

The Cleveland, Columbus, Cincinnati and Indianapolis R. R. Co. v. Newell.

every respect satisfactorily shown; neither can it be said that the condition of the roadway at the place where two rails broke in such quick succession was so definitely established as to repel the inference of probable defect. If it had been the fact, it seems to us it must have been within the power of the company to have shown by persons of skill and experience in railroad management, that the use of a rail of slightly uneven height was a proper and usual thing under the circumstances, or that the condition of the atmosphere was such as to have accounted for the successive breaking of good rails, properly laid on a sufficient roadway.

Upon these points the evidence is not satisfactory, and considering all the evidence, with the presumption which the law raises, we can not say that either the general verdict or the answers to special interrogatories are without support.

The extent of suffering, and the nature and probable permanency of the injuries sustained by the plaintiff, became a subject of inquiry at the trial.

Subsequent to the commencement of the suit, the plaintiff submitted himself to an examination by Dr. Jameson. It may be inferred from the plaintiff's testimony, that the examination was procured for the double purpose of ascertaining the nature and extent of his injuries and of receiving treatment which was prescribed, and also to qualify the physician as a medical witness to represent his condition in the approaching trial. We infer, however, that Dr. Jameson knew of no purpose beyond that of treatment at the time the examination was made.

At the proper time Dr. Jameson was called as a witness on plaintiff's behalf, and in the course of his examination he was asked the following question: "Where did he complain of his injury—where did he say it was?" Over the defendant's objection, the witness answered as follows: "He said he was suffering a great deal of pain and tension in the lower portion of the back—in the lumbar region—across the small of the back." Again, the witness, further on in his testimony, said,

in answer to a series of questions: "That he complained of a sensation of numbness in the lower extremities, and those parts of the body below the part that would correspond with the injured part of his spine; and I think he complained, also, of a sense of constriction, but of that I would not be positive."

This ruling of the court is made one of the grounds of the motion for a new trial.

Counsel for appellant insist that exclamations of pain, in order to be admissible in evidence, must be contemporaneous with the alleged injury and the then existing facts, and that they must have been made before sufficient time elapsed to enable the person making them to form plans for future lawsuits.

They insist, further, that they must have been made *ante litem motam*, not only before suit brought, but before the controversy existed in any form.

In a general sense, and as applicable to a different class of cases, the rule as stated by counsel is approximately correct. Where, however, it becomes important to illustrate the physical or mental condition of an individual, either at the time an injury is received, or from thence to the time of an inquiry as to its severity, effect and nature, we think expressions or declarations of present existing pain or malady, whether made at the time the injury is received, or subsequent to it, are admissible in evidence. *Carthage T. P. Co.* v. *Andrews*, 102 Ind. 138; *Town of Elkhart* v. *Ritter*, 66 Ind. 136; *Howe* v. *Plainfield*, 41 N. H. 135; *Towle* v. *Blake*, 48 N. H. 92; *Kennard* v. *Burton*, 25 Maine, 39; *Hyatt* v. *Adams*, 16 Mich. 180; *Elliott* v. *Van Buren*, 33 Mich. 49 (20 Am. R. 668); *Brown* v. *New York Cent. R. R.*, 32 N. Y. 597; *Matteson* v. *New York Cent. R. R. Co.*, 35 N. Y. 487; *Johnson* v. *McKee*, 27 Mich. 471; *Earl* v. *Tupper*, 45 Vt. 275.

Expressions of present existing pain, and of its locality, are exceptions to the general rule which excludes hearsay evidence. They are admitted upon the ground of necessity, as

being the only means of determining whether pain or suffering is endured by another. Whether feigned or not is a question for the jury.

Such declarations and expressions are competent, regardless of the person to whom they are made. They are especially competent and of more weight when made to a physician for the purpose of receiving treatment, or to a medical expert who makes an examination at the request of the opposite party, or by the direction of a court, for the purpose of basing an opinion upon as to the physical situation of the person whose condition is the subject of inquiry. *Quaife* v. *Chicago, etc., R. W. Co.,* 48 Wis. 513 (33 Am. R. 821); *Atchison, etc., R. R. Co.* v. *Frazier,* 27 Kan. 463.

It is only when such declarations assume the form of a narrative of past experience or suffering, or of a relation of the cause and manner of the injury, or where they are made *ante litem motam* to one not an attending physician or a medical expert under the condition above mentioned, that their admissibility becomes the subject of serious discussion.

Statements of past sufferings and pains, when not made to a medical expert for the purpose of enabling him to form an opinion upon with a view to treatment or other legitimate purpose, are clearly inadmissible. *Roosa* v. *Boston Loan Co.,* 132 Mass. 439; *Bacon* v. *Charlton,* 7 Cush. 581. And statements of the cause of the injury or of past occurrences, made to any one, unless made so nearly contemporaneous with the principal fact to which they relate, or unless they are made while the transaction is in progress, so as to constitute a part of the *res gestæ,* are also inadmissible. *Inhabitants, etc.,* v. *Inhabitants, etc.,* 99 Mass. 47. When so related or connected as to become part of the *res gestæ,* they may be received as evidence bearing on the principal fact. *Insurance Co.* v. *Mosley,* 8 Wall. 397.

The rule is not to be extended beyond the necessity upon which it is founded. Past events and the manner in which an injury was received are ordinarily susceptible of proof by

direct evidence. For that reason such statements, not made contemporaneous with the occurrence, or so near it as to become part of the transaction, no matter to whom made, are inadmissible. *Chapin* v. *Marlborough,* 9 Gray, 244; *Illinois Central R. R. Co.* v. *Sutton,* 42 Ill. 438.

A physician may, however, testify to a statement or narrative given by a patient in relation to his condition, symptoms, sensations and feelings, both past and present, when such statements were received during and were necessary to an examination with a view to treatment, or when they are necessary to enable him to give his opinion as an expert witness. *Quaife* v. *Chicago, etc., R. W. Co., supra; Barber* v. *Merriam,* 11 Allen, 322; *Looper* v. *Bell,* 1 Head, 373; *Yeatman* v. *Hart,* 6 Humph. 374; *Eckles* v. *Bates,* 26 Ala. 655.

The statements made by the plaintiff to Dr. Jameson, with which we are here concerned, do not appear to have been statements of past events or a narration of past sufferings, but of then existing pain. It is true they were made after the suit was commenced, and it may be said, too, they were not made wholly with a view of receiving medical treatment. It does appear, however, that treatment followed the examination, and so far as appears from the examining physician, the examination was made with that end in view. It may be conceded that statements made during an examination so brought about are not entitled to the weight they otherwise might have. We think they were nevertheless admissible in evidence, not for the purpose of establishing the truth of the statements made, but for the purpose of determining the basis upon which the opinion of the witness was founded. *Barber* v. *Merriam, supra.*

Since the witness was not applied to solely for the purpose of qualifying him to testify as an expert in the plaintiff's behalf, we need not determine the admissibility of statements made to experts in the course of an examination voluntarily applied for after suit commenced, which examination was had with no other purpose in view than that the examining phys-

The Cleveland, Columbus, Cincinnati and Indianapolis R. R. Co. *v.* Newell.

ician should thereby become qualified to testify as a witness. That the evidence would be admissible in such a case, is sustained by high authority, and that cases might arise in which such evidence would be admissible in order to prevent a failure of justice and protect the just rights of parties, seems scarcely to admit of doubt. That it should be admitted, if at all, under proper limitations, and subjected to scrutiny when admitted, may be conceded. But it has been held admissible. *State* v. *Gedicke,* 43 N. J. L. 86 ; *Kent* v. *Town of Lincoln,* 32 Vt. 591 ; *Matteson* v. *New York Cent.R.R. Co., supra.*

The case of *Grand Rapids, etc., R. R. Co.* v. *Huntley,* 38 Mich. 537 (31 Am. R. 321), may be said to be in a measure opposed to the admission in evidence of statements made to any other than an attending physician when such statements are made after suit commenced. The case is, however, not opposed to the conclusion at which we have arrived on the facts in this case. Whether we should feel disposed to follow it to the full extent to which some of the reasoning of the learned judge who delivered the opinion might lead, we need not now determine.

At the proper time the court gave an instruction concerning the burden of proof, which is a subject of discussion. The substance of the instruction was, that if the plaintiff had shown by the evidence, that while being carried as a passenger the car in which he was seated was thrown from the track, and he was, without fault on his part, injured, he had thereby established a cause of action, and that, unless the defendant had proved by a preponderance of the evidence that the injuries resulted without any fault on its part, he was entitled to a verdict.

Without regard to whether the instruction complained of was in all respects technically and verbally accurate, since it appears from the answers to the special interrogatories that the jury found that the defendant was, in respect of the matters already alluded to, negligent, the error in the instruction, if there was any, was harmless.

A judgment will not be reversed upon an erroneous in-struction, when it affirmatively appears from answers to in-terrogatories that the instruction complained of was not influential in inducing the verdict. *Worley* v. *Moore*, 97 Ind. 15; *Hayden* v. *Souger*, 56 Ind. 42 (26 Am. R. 1); *Bedford, etc., R. R. Co.* v. *Rainbolt, supra.*

Upon the subject of the burden of proof, which has been presented on both sides with great research and ability, it may be proper to say that upon the issue of negligence the burden was, and remained, on the plaintiff throughout the trial. Upon the whole case, it was incumbent on him to establish negligence to the satisfaction of the jury.

When, however, he made it appear in evidence that he was a passenger on the defendant's train, and while being carried as such the car in which he was seated left the track, and that he suffered injury therefrom, he had then shown a state of things upon which a presumption of negligence arose against the defendant. This presumption stood with the force and efficiency of actual proof of the fact, and was available for his benefit until it was negatived and overthrown by proof of other facts.

The necessity or burden was then cast upon the defendant of relieving itself from the presumption of negligence thus raised. This would be done, if it was true that the plaintiff was a passenger on its train and the car had left the track, not by disputing the evidence which the plaintiff offered, but by bringing forward evidence to establish collateral facts in explanation of the immediate cause of the accident, and to show that in the conduct of its business it had employed the utmost skill, prudence and circumspection practically and usually applied to railroad carrying, and that, notwithstand-ing all that, the cause of the accident was not and could not reasonably have been discovered and guarded against.

Upon each and all of the separate collateral facts which went in explanation of the cause of the accident, and to demon-

strate its diligence and care in the operation of its trains, and in the maintenance of its track, carriages, machinery and appliances in a condition of safety, the burden was on the defendant. Thompson Carriers, pp. 210, 211. The evidence upon all these subjects was within its own control, and presumably all that was available was subject to its command. If these facts were so far proved as to overthrow the presumption of negligence, and no countervailing proof was offered by the plaintiff, its defence was complete. And as the plaintiff had the burden of the issue, the presumption and proof of negligence might have been overthrown if the weight of the explanatory facts proved had risen to such a degree and level as that the jury on the whole evidence could not have found whether the defendant was negligent or not. It is, therefore, not entirely accurate, in a case like this, to say that the burden is on the defendant to prove that it was not negligent, but it is the rule that when an injury occurs to a passenger under like circumstances, a presumption of negligence arises which can only be overthrown by proof that it resulted from inevitable or unavoidable accident, against which no human skill, prudence or foresight, as usually and practically applied to careful railroad management, could provide. *Bedford, etc., R. R. Co.* v. *Rainbolt,* 99 Ind. 551, and cases cited; *Terre Haute, etc., R. R. Co.* v. *Buck,* 96 Ind. 346 (49 Am. R. 168); *Pittsburgh, etc., R. R. Co.* v. *Williams,* 74 Ind. 462; *Cleveland, etc., R. W. Co.* v. *Newell,* 75 Ind. 542; *Seybolt* v. *New York, etc., R. R. Co.,* 95 N. Y. 562 (47 Am. R. 75); *Caldwell* v. *New Jersey Steamboat Co.,* 47 N. Y. 282; *Edgerton* v. *New York, etc., R. R. Co.,* 39 N. Y. 227; *Lamb* v. *Camden, etc., R. R. Co.,* 46 N. Y. 271 (7 Am. R. 327); *Bates* v. *Pricket,* 5 Ind. 22; *Adams* v. *Slate,* 87 Ind. 573; *Fay* v. *Burditt,* 81 Ind. 433 (42 Am. R. 142); *Carver* v. *Carver,* 97 Ind. 497; *McDougal* v. *State,* 88 Ind. 24.

What has been said disposes of the instructions given, and those tendered and refused, which relate to the subject of the

burden of proof, and the degree of diligence required of the defendant.

As before remarked, there was evidence tending to show that the accident was caused by the breaking of a rail, and that another rail had been broken shortly before at the same place as that at which the accident occurred.

As relevant to this evidence the court gave an instruction, to the effect that if the jury found from the evidence that the broken rail which caused the car to leave the track had been put down in the place of another, which had broken the same morning at exactly the same place, they might take this fact into consideration in determining whether the rail which broke was a good rail, and whether it was properly and carefully put down.

The defendant requested an instruction presenting substantially the opposite view. Giving the one and refusing the other are now made grounds upon which a reversal is insisted.

In support of their position appellant's counsel argue, and support their position by authority, that in an action which involves the question of negligence, it is not competent to prove other disconnected, though similar, acts of negligence, for the purpose of raising a presumption of negligence in the case in question. 1 Whart. Ev., section 40 ; *Pittsburgh, etc., R. W. Co.* v. *Ruby,* 38 Ind. 294 (10 Am. R. 111) ; Pierce Railroads, p. 293.

Conceding the rule as contended for, when applied to the proposition as stated, we are nevertheless of the opinion that the point is not well made in this case. One important object in the investigation here was to ascertain the condition in which the defendant's track and roadway were at the time and place the accident occurred. It was likewise important to determine whether anything had occurred which should have attracted the notice or attention of the company to that place.

Assuming that a good rail properly adjusted in the track upon a suitable roadway would not break, then the fact that

a number of such rails, so adjusted, had broken in quick succession at the same place, would tend to invite attention to that place, and also to raise an inference that the roadway was defective. This inference would be strong or weak, in proportion to the number and rapidity of such occurrences. But whether strong or weak, it was competent to be considered for what it was worth.

In the case of *Morse* v. *Minneapolis, etc., R. W. Co.*, 30 Minn. 465, it was held, in an action to recover damages for an injury caused by an accident resulting from a broken rail and defective switch, that it was error to admit evidence of defects at other places in the road, but for the purpose of showing the defective character of the switch at the point where the accident occurred, the plaintiff was permitted to show that other engines missed the track at the same place both before and after the accident, while the switch remained in substantially the same condition. In that case the court said : " Upon any issue as to the condition or safety of any work of human construction designed for practical use, evidence showing how it has served, when put to the use for which it was designed, would seem to bear directly upon the issue."

We think that the instruction was fully justified under the ruling in *City of Delphi* v. *Lowery*, 74 Ind. 520 (39 Am. R. 98), and the cases there cited, and that it was proper for the jury to consider the fact of the successive breaking of rails at the same place within so short a time, both to indicate the condition of the track and roadway at that point, and that the defendant had notice of any probable defect. This conclusion is not in conflict with the ruling in *Ramsey* v. *Rushville, etc., G. R. Co.*, 81 Ind. 394.

What has been said in respect to the instructions and of their effect in reaching the result arrived at by the jury, as indicated by the special findings, disposes of all questions relating to instructions given or refused, except the question made upon instruction No. 12, which relates to the assessment of plaintiff's damages.

The Cleveland, Columbus, Cincinnati and Indianapolis R. R. Co. v. Newell.

In this instruction the jury were told that, in assessing the plaintiff's damages, they might consider the pain which he had suffered or was likely to suffer, the value of time lost, or which was likely to be lost by reason of the injury, whether such injury was likely to be permanent or not, whether the plaintiff was likely to remain an invalid or get better or worse, and, upon a consideration of all the facts proved, ascertain the extent of the injury and award such damages as in their judgment would compensate, so far as money can, for such injury.

The objection urged against this instruction is, that it assumes the existence of many facts in dispute; that it authorizes the implication that the plaintiff could not be fully compensated in damages, and that for these reasons it was an invasion by the court of the province of the jury.

In estimating the pecuniary loss or damages, in a case like this, the jury is not limited to past pain and suffering and to the time already lost. They may take into consideration all the consequences of the injury, future as well as past, when the proof before them renders it reasonably certain that future loss and suffering are inevitable. *Town of Elkhart* v. *Ritter*, 66 Ind. 136.

As the elements of damage recited by the court were all proper to be considered, and as the damages were to be ascertained and awarded upon a consideration of all the facts proved, we think the instruction can not be considered as having invaded the functions of the jury, nor must it be assumed that the jury were diverted from considering the facts proved, as the basis upon which to predicate the amount of compensation to be awarded, by what was, at most, an irrelevant suggestion from the court.

Having thus examined all the questions presented, and finding no error in the record, the judgment is affirmed, with costs.

Filed Dec. 12, 1885.