## L. S. & M. S. R. R. Co. v. MARY E. YOKES.

1. PRIMA FACIE PROOF OF NEGLIGENCE.

Evidence showing that two trains coming together on the same track, causing a head collision, is *prima facie* proof of negligence on the part of the company, and it is not error for the court to so charge the jury.

2. INSUFFICIENT GROUNDS FOR SETTING ASIDE A VERDICT.

A mere difference of opinion upon a conflict of evidence alone would not justify a reviewing court to set aside a verdict, upon the ground that the verdict was against the evidence.

3. ADMISSION OF STATEMENTS MADE BY THE PERSON INJURED.

A physician, although called to treat plaintiff, cannot be permitted to testify in plaintiff's behalf as to what plaintiff said as to the cause of the injury, and that plaintiff attributed her condition to such injury.

4. ADMISSIBILITY OF EXPRESSIONS OF PAIN.

Expressions of pain are admissible as proof of actual suffering; such statements of pain and of its locality are exceptions to the rule excluding hearsay evidence, and are admitted only upon the ground that they are the natural and ordinary accompaniments and expressions of suffering, and are regarded as acts rather than declarations, and admitted from necessity.

5. DECLARATION MADE SOME TIME AFTER THE INJURY.

In an action to recover damages for alleged negligence causing a personal injury, declarations of the party injured made some time after the injury, simply to the effect that the party is suffering pain, when not made to a physician for the purpose of professional attendance, are not competent as evidence.

ERROR to the Court of Common Pleas of Mahoning county.

LAUBIE, J.

This is a proceeding brought to reverse the judgment of the cour below in an action wherein Mrs. Yokes was plaintiff and the company was defendant, to recover for injuries to her person received in a collision between a passenger and freight train upon the defendant's road. This collision occurred on the 5th day of August, 1889, and the injuries complained of, as stated in the petition, are that while sitting in the car, and at the time of the collision, she was thrown forward violently upon the seat in front of her, and on the re-bound against the seat she was sitting in, and forward again onto the seat in front; that she was struck violently on the bowels and side, and thereby sustained a great shock, concussion and injury to her stomach, bowels and uterus and appendages thereto, and to her spine and nervous system, causing spinal irritation and nervous prostration, which shortly thereafter developed into uterine trouble and general debility, with reflex heart affection, from which injuries she has been unable to obtain any relief, and her condition has so continued, and will so long as she shall live. The petition also alleges that before that time plaintiff was a healthy woman, and had not suffered from these complaints.

The defendant company answered, admitting that it was a corporation; that it was operating the road in question; that plaintiff had purchased a ticket, and was a passenger on the line of the road, the 5th day

of August, 1889, and that the stations of Williamsfield and Andover are regular stations on the line of the road, but denied all other allegations in the petition. And upon these issues the case was tried, and resulted in a verdict of $7585.50, for the plaintiff below. It is now sought to have this judgment set aside upon the ground of error in the charge of the court; that the verdict was contrary to the evidence and the law, and for error of the court in regard to the admission and exclusion of testimony during the trial.

The court charged the jury that the fact being shown of a collision between the trains of the company, was evidence of negligence upon its part; and that is the law as we understand it. Two trains coming together on the same track,—a head collision—is *prima facie* proof of negligence on the part of the company, and the court therefore committed no error in so charging.

Upon the second exception, that the verdict is against the evidence, there is doubt. Under the evidence it was a very close question, whether the plaintiff had been injured in that accident or not. But that is not ground sufficient for us to upset the verdict of the jury; a mere difference of opinion upon a conflict of evidence alone, would not justify us in setting the verdict aside. The next exception is as to the testimony of Dr. Bracken.

Dr. Bracken was called to see plaintiff some three years after the injury and prescribed for her, and this question was put to him in chief:

Q. When you were called to see Mrs. Yokes, were you informed as to her having been injured in a railroad collision, and what was said about it? (Defendant objects; objection overruled. Defendant excepts.)

A. I was informed by her that about four years ago she had been injured in a railroad collision. I understood was some where north of where she resides, and she said she had not seen a well day since, and thought it was the cause of her present trouble. (Defendant objects, and asks that the answer be excluded. Objection overruled. Defendant excepts.)

The answer gives merely the statement of the plaintiff—not anything that the witness had ascertained himself, but the statement of the plaintiff. Perhaps the question called for that, and it was therefore objected to, but at least the answer gave it simply as her statement, and that answer was asked to be excluded, the request overruled and exception taken. The admission of this testimony opened the door for all that followed, and a great deal of the same kind did follow. It opened the door for the testimony of Dr. McCurdy, who went into the statement of the plaintiff in regard to her condition, symptoms, sensations; seat of pain, cause of the accident, although he was called as an expert merely, and had examined her for the purpose of becoming a witness; and although there was no specific objection to some of it, it was not necessary for the defendant below to continue to object to that class of testimony; once was sufficient. Indeed, where objection is once made, and the court has established a rule, some courts assert that it is impertinent in counsel to continue objecting.

A physician in a case like this, although called to treat the plaintiff, can only testify to what the plaintiff said as to her physical condition, symptoms, sensations and seat of disease. If this be the rule, then, what was admitted here in Dr. Bracken's testimony was improper, because it is not a statement of the plaintiff as to her physical condition, her symptoms, sensations, or the seat of the disease, but it is a recital of how the

injury was caused of which she was complaining, and that she had not seen a well day since that injury, and that she attributed her condition to the injury, or that that was the cause.

*Chapin* v. *Marborough*, 9 Gray, 244, was an action of tort for injuries received by plaintiff, on the 11th day of January, 1856, from a defect in a highway. At the trial the plaintiff called a physician, who testified that he saw the plaintiff for the first time on the 2d day of June, 1856, and that the plaintiff showed him his leg, and wished him to examine it. That the plaintiff complained of extreme pain in the leg, and said he had been struck by a horse some number of months before, four or five months before, on that leg. To this narration the defendants objected, but the court admitted the testimony. The verdict was for the plaintiff, and the defendant alleged exception. Metcalf J:

"The exception must be sustained, which was taken to the admission of the plaintiff's statement to his physician that his leg had been struck by a horse. It was a statement of a fact, and was used as evidence of that fact. It was therefore wrongly admitted. The rule of evidence in cases like this, was rightly announced by Mr. Justice Biglow, in *Bacon* v. *Charlton*, 7, Cush., 586, as follows : 'Where the bodily or mental feelings of a party are to be proved, the usual and natural expression of such feelings made at the time are considered competent and original evidence in his favor. There are ills and pains of the body, which are proper subjects of proofs in courts of justice, which can be shown in no other way. Such evidence, however, is not to be extended beyond the necessity on which the rule is founded. Anything in the nature of narration or statement, is to be carefully excluded, and the testimony is to be confined strictly to such complaints, exclamations and expressions as usually and naturally accompany and furnish evidence of present existing pain or malady.' The defendants are entitled to a new trial in consequence of the admission of the plaintiff's statement."

*The Inhabitants of Ashland* v. *The Inhabitants of Marborough*, 99, Mass., 47, was an action to recover money expended in supporting William H. Mainard and his family, and it involved the question whether he was suffering from a disease prior to having been mustered into the service, in July, 1861. So that his bodily condition was the subject of investigation. Among other evidence offered and admitted against the objection of the defendants, one witness, not a physician, testified that "Mainard, while in his employment, before enlisting, one day said that he had seen Dr. Jackson, who told him that he had got a bad thing on him, and that his kidneys were diseased;" and that on another day, after Mainard had been discharged from the service, the witness asked him what ailed him, and he said his old complaint before he went into the army; and another witness, who also was not a physician, testified that Mainard, before enlisting did not appear like a well man. The jury returned a verdict for the plaintiff, and the defendants alleged exception.

Upon the point that I am now discussing, the court say, Chapman, J.:

"Evidence of the usual and natural expression of present feelings or emotions is admissbile, though it consist wholly or partly of words. But such evidence is not to be unnecessarily extended, and is not to include narration of what is past. A physician who is called as an expert may testify to the statements which a sick or injured person made to him as his patient for the purpose of obtaining his professional aid as to the character and seat of his injuries and sensations and describing his condition and symptoms, but

a physician's testimony cannot include a recital of past events which his patient made to him." Citing 9 Gray, 244, and 6 Allen, 146.

In *Roosa* v. *The Boston Loan Company*, 132 Mass., 439, it was held:

"The statement by a patient to his physician of the cause of an injury from which he is suffering is inadmissible as evidence of that cause in an action for the injury."

Endicott. J., in the opinion says:

"When the bodily or mental feelings of a party are to be proved, his exclamations or expressions indicating present pain or malady are competent evidence, and in *Bacon* v. *Charlton*, 7 Cush., 581 and 586, where this rule is stated, it was said by the court: 'Such evidence, however, is not to be extended beyond the necessity on which the rule is founded. Anything in the nature of narration or statement is to be carefully excluded, and the testimony is to be confined strictly to such complaint, exclamations and expressions as usually and naturally accompany and furnish evidence of a present existing pain or malady.' * * *

"In *Illinois Central Railroad* v. *Sutton*, 42 Illinois, 438, the plaintiff was ejected from a train. He contended that he had been suffering from disease, and that it was aggravated by the walk which he was obliged to take by reason of his expulsion. His physician testified as to his condition, and also that he was informed by the plaintiff that his present condition was caused by over exertion in walking.

"The court held that the statements of a patient to a physician of his pain and suffering and in regard to his bodily condition are competent to enable him to form an opinion as to the extent and nature of his injuries, but that it was not competent for a physician to testify to the plaintiff's statements as to the specific cause of the injury; that being one of the issues before the jury. * * *

"The plaintiff here testified that she was struck in the stomach by the defendant's servant. The physician in answer to the question, 'what did the plaintiff tell you about her condition' replied, 'she stated that she had received a blow in the stomach.' It would clearly have been competent for the physician, after having testified to the condition of the plaintiff, and to the complaint and symptoms of pain and suffering stated by her, to have given his opinion that they were such as might have been expected to follow the infliction of a severe blow. Such evidence was admitted without objection. But it was not competent for the physician to testify to her statement that she had received a blow in the stomach. While a witness, not an expert, can testify only to such exclamations and complaints as indicate present existing pain and suffering, a physician may testify to a statement or narrative given by his patient in relation to his condition, symptoms, sensations, and feeling; both past and present. In both cases these declarations are admitted from necessity, because in this way, only, can the bodily condition of the party who is the subject of injury, and who seeks to obtain damages, be ascertained. But the necessity does not extend to declarations by the party as to the cause of the injury which is the principal subject matter of inquiry, and which may be proved by other evidence. No case has been called to our attention, and we are not aware of any case, where such evidence has been admitted."

See, also, *Emerson* v. *Gas Co.*, 6 Allen, 146, where the physician was not permitted to testify that the plaintiff said that the inhaling of gas had made him sick. See, also, *R. R. Co.* v. *Newell*, 104 Ind., 264.

We think it is clear that a physician, although called to treat the plaintiff, may not testify as to what the plaintiff said as to the cause of the injury, and that the plaintiff attributed her or his present condition to such injury.

Dr. McCurdy was called as a witness by the plaintiff, he having examined her apparently for the purpose of being a witness. It appears there was a commission appointed by the court, during the trial, to examine this lady—doctors Booth and Dixon. Doctor McCurdy attended this examination, presumably at the instigation of the plaintiff below, because she called neither of the witnesses appointed by the court to make the examination, but she did call him. He was permitted to testify, not only to the condition of the plaintiff on that examination, but her statement as to the cause of her condition and manner of injury and her symptoms and sensations.

Dr. McCurdy having been called in not to treat the plaintiff, but simply for the purpose of being made a witness, was not competent to testify as to her statements, even as to her present condition. A physician or surgeon called in to examine the plaintiff for the purpose of being examined as a witness, cannot testify in the plaintiff's behalf, to plaintiff's statement as to condition, suffering, symptoms or pain, unless appointed by the court to make the examination.

In Wharton on Evidence, sec. 268, the author states the rule generally, thus:

"So when the nature of a party's sickness or hurt is in litigation, his instinctive declaration to his physician or other attendants during such sickness may be received. Immediate groans and gestures are in like manner admissible. But declarations made after convalescence, or when there has been an opportunity to think over the matter in reference to projected litigation, are inadmissible. Thus, an action for carnally knowing the plaintiff, a girl of ten years, by force, and giving her the venereal disease, the plaintiff's statements made to a physician three months after the event have been ruled out."

In this case, this collision in which the plaintiff claimed to have received injury, occurred on August 5, 1889, and her suit was brought in the first week in July, 1893, almost four years after the accident—and after, as one witness swears, uncontradicted, she had been prompting Mr. Ray, whose wife and babe were in the car, to sue for the injury to the baby, but not claiming she had been injured herself—and the examination was in 1895.

In *Darigan* v. *The Railroad Company*, 55 Conn., 285, this is a portion of the syllabus: "The plaintiff offered a surgeon as an expert; the witness had examined the plaintiff's injury, and in stating the result he testified, against the defendant's objection, to actions and words of plaintiff while being examined, indicating pain. Held, the evidence was inadmissible."

On page 309, the judge delivering the opinion says:

"The plaintiff offered a surgeon as an expert. The witness had examined the plaintiff's injuries, and was asked to state the result of his examination. In doing so, against the objection of the defendant, he testified to actions and words of the plaintiff while being so examined, indicating pain and suffering. The defendant objected on the ground that the witness was not consulted by the plaintiff for treatment, but for the purpose of being at some time used as a witness. This evidence was taken subject to the objection, but the court subsequently made no

ruling on the subject. We think the evidence was clearly inadmissible. Pierce on Railroads, 298, *Grand Rapids and Indiana Railroad Co.* v. *Huntley*, 38 Mich., 537."

"If otherwise, easy facilities would be furnished for parties to introduce in evidence their own declarations, made out of court, not under oath, and when the temptation to exaggerate, and even to utter untruths, would be pretty strong. Ordinarily, when a patient consults a physician with a view to treatment, he will state the facts as they are. But, unfortunately, when a party consults a physician, preparatory to the trial of his case simply, his statements are not always reliable."

The case of the *Railroad Company* v. *Huntley, supra*, was a case brought by Mrs. Huntley for personal injuries suffered on the 5th day of November, 1874, by reason of an accident caused by a passenger car being thrown from the track and upset, and evidence of what she said about the matter was admitted; and the supreme court, in the opinion, pp. 543, 544, say:

"Dr Ball, who was present with Turner at both of the examinations, testifies that he was not desired to make and did not make any examination beyond the shoulder, and knew of no further examination. He was asked and allowed to answer what expression Mrs. Huntley made at the last examination, three weeks before the trial, and answered that she complained of pain, and that it hurt her. He also swore that the examination was for the purpose of giving testimony. His evidence further was not very strongly corroborative of Dr. Turner's view.

"The question is raised whether the expressions of pain were admissible as proof or actual suffering.

"It has been held several times by this court that statements of pain and of its locality were exceptions to the rule excluding hearsay evidence.

"The statements are admitted only upon the ground that they are the natural and ordinary accompaniments and expressions of suffering.

"It would be impossible in most cases to know of the existence or extent or character of pain without them. They are received therefore, as acts, rather than declarations, and admitted from necessity. The rule that admits declarations of present suffering has never been extended so as to include declarations either of past suffering or of the causes in the past of such suffering, so as to make such statements proof of the fact. Declarations concerning the past are narratives, and not acts. Exclamations of suffering may be, and if honestly made, are parts of the occurrence itself.

"Is is difficult to lay down any very clear line of admission or exclusion where the exclamation refers to the feelings of the moment; but we think it would not be safe to receive such testimony in any case where it is not the natural and ordinary expression of pain called out without purpose or in the course of medical treatment. The unstudied expressions of daily life, or the statements on which a medical advisor is expected to act, and which, if feinged, he should have skill enough to subject to some test of truth, stand on a footing which removes them in general from suspicion.

"But we cannot think it is safe to receive such statement which are made for the very purpose of getting up testimony, and not under ordinary circumstances. The physicians here were not called in to aid or give medical treatment. The case had been relinquished long before as requiring no further attendance. They were sent for merely to enable the plaintiff below to prove her case; the whole course of the plaintiff

was taken to no other end. She had in her mind just what expressions her cause required. They were therefore made under a strong temptation to feign suffering, if dishonest, and a hardly less strong tendency, if honest, to imagine or exaggerate it. The purpose of the examination removed the ordinary safe-guard which furnished the only reason for receiving declarations which must have been made *ante litem motam*, which is interpreted to mean not nearly before suit brought, but before the controversy exists upon the facts."

The case of *Quaife* v. *The Railroad Company*, 48 Wis. 513, is cited in many instances to sustain the admissibility of testimony of this kind, but it does not. In that case all of the physicians called had been appointed by the court, a commission to examine the plaintiff, and it was their testimony as to her statement as to her condition that was objected to. It is there said:

" It has been held in some cases that the statements of the kind above mentioned, made after suit brought, should not be received for any purpose, not even for the purpose of in part founding an opinion upon them by an expert. We think, however, the true rule on this point is also stated in the case first above cited, *Barber* v. *Merriam*, in 11 Allen. * * *

"It would have presented a different question, if the plaintiff, on her part, without the knowledge or presence of witnesses for the defendant, had called experts to examine her as to her present condition, for the purpose of giving evidence on the trial, and not for the purpose of giving medical advice. In that case the objection would perhaps have been well taken, that in forming an opinion as to her condition, the witnesses should not be allowed to take into consideration her statements made at such examination. In such case the statements would be subject to a suspicion that they were made for the purpose or getting an opinion favorable to her. In the present case, the examination was not sought by her, and her statements were made in answer to interrogatories put by experts, who are supposed to be impartial, if not hostile to her, and all her statements were made subject to a full cross-examination by the experts, so that there would be very little probability that they would be misled or influenced by any colored or false statements."

The case of *C., C., C. & I. R. R, Co.* v. *Newell, supra,* is also frequently cited in favor of the admissibility of such statements to whomsoever made, but the point was not decided in that case. In the opinion, p. 271, it is expressly so stated.

In course of examination of the plaintiff's witnesses, certain questions and answers were excluded as to the declaration of the plaintiff during the period occurring from August 5, 1889, the time of this collision, up to the time of the trial, and her condition and her complaints of the pain and suffering she was undergoing, by persons not experts. Her mother was one. These, while excluded by the court properly in chief, were permitted to be testified to in rebuttal.

In order to ascertain whether this was competent in rebuttal, we must look to the character of the testimony upon the part of the defendant, and what it was offered for. The defendant denied that she was injured at all in the collision, and gave evidence by the witnesses who had seen her upon the same day, directly after the collision, and at other times, showing that they talked with her about it, and asked who was hurt, and that she made no complaint about being hurt herself; and further that her pains, symptoms and physical condition were attribu-

table simply to change of life, and not to the accident. The subject of investigation was whether she had been injured, and not whether she had made complaints; and this testimony was offered to prove that she had not been injured.

How, then, was it competent to rebut this by evidence that she complained of pains in various parts of the body to other persons on other occasions? They were simply self-serving declarations, and not competent for any purpose.

The bill of exceptions in the case at bar shows:

"Plaintiff offers in evidence a portion of the deposition of Delia Hall, for the purpose of showing that plaintiff made complaints after the accident, and the pain she suffered," etc.

Defendant objects. Objection overruled. Defendant excepts.

Q. From what did she complain, and in what way was she troubled; please describe it in your own way? A. She continued to complain all the time of pains in her back, side, and lower parts of the body; was troubled with great nervousness and sleeplesness at times, and at other times would be in a drowsy condition, and a greater part of the time she was troubled with flooding, from which she could obtain no relief, and very frequently she was in very severe pain; so much so, that her outcries could be heard outside of the house, and sometimes nearly half a mile distance.

Plaintiff also offers in evidence a portion of the deposition of Mrs. Judah Betts, which reads as follows:

Q. What, if anything, do you know about the injury received by Mrs. Yokes, in the railroad wreck of August, 1889, and what her condition has been since? Defendant objects. Objection overruled. Defendant excepts.

A. I learned soon after it occurred, and came to see her. She seemed to be suffering great pain; said that every breath she took caused her great pains; complained of pain in the chest, back, stomach, bowels, uterus and lower part of the body, and one place on right side on the lower portion of her body in particular she complained of great pain.

Defendant objects and asks that the answer be excluded. Objection overruled. Defendant excepts.

It is clear that testimony of non-experts, giving the declarations of the plaintiff in the case as to his or her condition, are not now, at least, considered competent, unless they are exclamations, screams, groans, or something of that nature which are the natural and necessary accompaniment of great bodily suffering; and the rule especially excludes all statements made in answer to questions, or by way of imparting information.

All such testimony was permitted merely from necessity, because the parties could not testify themselves; and that was the sole foundation of the exception, grafted upon the rule which excludes hearsay testimony.

The reason for such exception having ceased, parties being now permitted to testify, the exception itself should cease.

These declarations were not part of the *res gesta*, as that belongs only to the principal fact, to wit, the accident itself. If they were, they would have been admitted in chief when offered. At all events, pain of the body is not an act; it is a mere sensation, and hence it can be no *res gesta* within the meaning of the rule that permits evidence of the declarations of a party as to some act done by him, made at the time of doing the act; but exclamations, cries and groans it *seems* are still admissible, because they are the usual and natural accompaniment of pain.

In *Bacon* v. *Charlton*, 7 Cush., *supra* at the trial the presiding judge ruled that groans or exclamations of pain on the part of the plaintiff, after the injury, such as " 'Oh ! my head,' at the same time putting his hand to his head," might be testified to by a non-expert, but that "any statement of his condition or feelings made in answer to a question, or as a narrative, or with a view to communicate information, was not admissable." And in sustaining this ruling BIGELOW, J., p. 556, says : "Anything in the nature of narration or statement is to be carefully excluded, and the testimony is to be confined strictly to such complaints, exclamations and expressions as usually and naturally accompany and furnish evidence of a present existing pain or malady. * * * The ruling of the court below on this point was strictly in conformity with the rules of law, and was properly guarded and limited." This case was subsequently approved in *Barber* v. *Merriam*, 11 Allen 322, and *Roosa* v. *The Boston Loan Co.*, *supra*. And to the same effect see *Ashland* v. *Marborough*, 99 Mass., *supra*.

In *Roche* v. *The B., C. & N. Railroad Company*, 105 N. Y., 294, the head notes are as follows:

"In an action to recover damages for alleged negligence causing a personal injury, declarations of the party injured, made some time after the injury, simply to the effect that he is suffering pain, when not made to a physician for the purpose of professional attendance, are not competent as evidence."

So also *held* : "Where at the time of making the declarations the plaintiff showed her arm, which had received the injury, and it was swollen and red. It *seems* that the rule is different as to groans, screams or exclamations indicative of pain."

And in the opinion, PECKHAM, J., says :

"The only question in this case arises upon the admission of the testimony of a third party that the plaintiff, some days after the happening of the accident which caused her injury, complained that she was suffering pain in her injured arm. * * * The witness did not testify that on these occasions the plaintiff screamed or groaned or gave other manifestations of a seemingly involuntary nature, and indicative of bodily suffering ; but he proved simple statements or declarations made by plaintiff that she was, at the time of making them, suffering pain in her arm. The plaintiff was herself sworn, and proved the injury and the pain. The condition of the arm the night of the accident was also proved—that it was very much swollen and black all around it, and subsequently red and inflamed, and continued swollen and inflamed more or less for a long time.

"The defendant challenges the evidence of complaints of pain thus made, on the ground that it was incompetent, and the argument made was, that the evidence as to the injury and its extent could not be thus corroborated by mere hearsay.

"Prior to the time when parties were allowed to be witnesses, the rule in this class of cases permitted evidence of this nature. 11 N. Y., 416 ; 28 N. Y., 344.

"These cases show the evidence was not confined to the time of the injury, or to mere exclamations of pain. The admissibility of the evidence was put in the opinion of Judge Denio, in 11 New York, *supra*, upon the necessity of the case as being the only means by which the condition of the sufferer as to enduring pain could in many instances be proved.

"Substantially the same class of evidence was admitted in England, and for the same reason. After the adoption of the amendment to the code permitting parties to be witnesses, the question under discussion was somewhat mooted in *Reed* v. *N. Y. C. R. R. Co.* 45 N. Y., 574, by Allen, Judge." * * * The case of *Hagenwecker* v. *C. I. & B. R. R. Co.*, 99 N. Y., 136, decides that even since the code, evidence of exclamations indicative of pain made by the party injured is admissible. * * *

"This shows there was no confinement of the evidence to the time of the injury. The evidence given, however, was of screams when the plaintiff's foot was touched, and of her exclamations of pain whenever the sheet was permitted to touch the foot. * * *

"Having thus admitted evidence of this kind since the adoption of the code amendment permitting parties to be witnesses, the question is, whether there is such a clear distinction between it and evidence of a simple declaration of a party that he was then suffering pain, but giving no other indications thereof, as to call for the adoption of a different rule. It seems to us that there is. Evidence of exclamations, groans and screams is now permitted more upon the ground that it is a better and clearer and more vigorous description of the then existing physical condition of the party by an eye witness, than could be given in any other way."

"The party can himself be a witness, if living ; and if dead, the suffering is of no moment, as it cannot be compensated for in an action by the personal representatives under the statute, and the exclamations of pain, the groans, the sighs, the screams can still be admitted. * * *

"For these reasons the evidence of Doctor McElroy, as to the plaintiff's declarations of existing pain when they were walking in the street together long after the accident, should not have been received."

On this question *The C., C., C. & I. Railway Co.* v. *Newell, supra*, is often referred to as sustaining a different doctrine ; but the point is not decided in that case. All that is said on the point is mere *dicta*, and, strange to say, cited *Bacon* v. *Charlton, supra*, and *Ashland* v. *Marborough, supra*, are cited to sustain it.

In the case at bar the trial court properly, therefore, excluded this testimony in chief. The contention that the testimony was competent in rebuttal cannot be sustained. It was no more competent in rebuttal than in chief. *Reed* v. *The N. Y. C. R. R. Co., supra*, to rebut the effect of defendant's evidence that plaintiff had continued to labor after the injury claimed, it was declared that the plaintiff could not be permitted to prove his own declarations of pain and suffering while so laboring, on the ground that "There is no longer a necessity of giving the declarations of living parties in evidence, which was formerly the reason of the rule admitting them in certain cases, and the reason of the rule ceasing, the rule itself, adopted with reluctance and followed cautiously should cease."

The majority of the court think this case should be reversed for the reasons stated. Judge Burrows, while he concurs in the law herein generally laid down, thinks the case ought not to be reversed for the reason that this testimony was not prejudicial, it having been included in other witnesses' statements ; and that the testimony in rebuttal was perhaps competent to rebut any claim made, or that might have been made, that she had not complained of pains and suffering.

Reversed and remanded for further proceedings.

*T. M. Sanderson*, for Plaintiff.

*W. S. Anderson & S. L. Clark*, for Defendant.