## EHRMAN v. MILLER.

[No. 14,611. Filed July 3, 1934. Rehearing denied October 1, 1934. Transfer denied March 12, 1935.]

124

*Eggeman, Reed & Cleland,* and *Snouffer & Murphy,* for appellant.

*J. H. & A. L. Aiken,* and *Otto E. Grant,* for appellee.

BRIDWELL, C. J.—Appellee filed her complaint in the court below to recover damages on account of personal injuries she sustained when an automobile in which she was riding, and one being operated by appellant collided, alleging that such collision, and her resulting injuries, were caused by the negligent conduct of appellant in the operation of the automobile which he was driving. Appellant answered by general denial. Trial by jury and a verdict for appellee in the sum of $5000. Appellant filed motion for a new trial which was overruled and he excepted. Judgment was rendered on the verdict and this appeal was perfected, the appellant assigning as error that the court erred in overruling his motion for a new trial. This motion assigned as

causes for a new trial that the verdict of the jury is not sustained by sufficient evidence; that it is contrary to law; that the damages assessed by the jury are excessive; error in the exclusion from the evidence of certain offered testimony; error in the giving of instructions, and in the refusal to give certain instructions tendered by the appellant.

In order to determine whether error was committed in the overruling of appellant's motion for a new trial it is necessary that the evidence be considered. Appellee asserts that the evidence is not in the record. An inspection of the transcript filed in this court discloses that there is embodied therein what purports to be a bill of exceptions containing the evidence, and, by return made to a writ of *certiorari* issued out of this court, an order-book entry is shown whereby it appears that within the time allowed by the court for the purpose, said bill of exceptions was presented, examined, approved, signed by the judge, ordered filed as a part of the record, and so filed. The order-book entry showing this action is a *nunc pro tunc* entry made upon application of appellant, and appellee contends that the court below erred in granting the application. The entry, however, has been made and is now part of the record and as the appellee has not presented this action of the court for review, by an assignment of cross-error, we can not consider the objection. *Alder* v. *Sewell* (1868), 29 Ind. 598. Another objection urged by appellee is that the praecipe filed by appellant directing the clerk "to prepare and certify for use on appeal . . . , a transcript of all papers filed in said cause, all orders and the rulings and the judgment therein rendered, including therein a copy of this praecipe" is not such a praecipe as to authorize the inclusion of the bill of exceptions containing the evidence as a part of the transcript. Our Supreme Court

has recently held that a bill of exceptions containing the evidence is a "paper filed in the cause" where the transcript affirmatively shows the signing and filing of such bill. *Smith* v. *Switzer* (1933), 205 Ind. 404, 186 N. E. 764. It is also contended that since appellant's praecipe for a transcript of the record was filed on January 15, 1932, and the bill of exceptions containing the evidence not until February 13, 1932, that, because of such fact, the clerk of the court below was without authority to include said bill of exceptions in the transcript, and that the same is not a part of the record in this cause. No authority is cited to sustain this contention and we have found none. The record, by an order-book entry, showing that said bill was approved, signed, ordered filed and filed within the time allowed by the court for this purpose, the evidence is in the record. *McMillan, Admr.* v. *Plymouth, etc., Power Co.* (1919), 70 Ind. App. 336, 123 N. E. 446; *Smith* v. *Switzer, supra.*

Among the assigned causes for a new trial is alleged error in the exclusion of the evidence offered by appellant of a medical witness, one Dr. Elston, who, at the request of appellant and with the consent of appellee, made a physical examination of appellee during the progress of the trial in order that he might be used as an expert witness, if desired.

Appellee's complaint contained allegations that by reason of the collision "she received severe shocks"; "that she is still suffering from the effects of said collision and that her health has been permanently impaired." At the trial she introduced evidence to prove an existing nervous condition, accompanied by severe headaches and pains occurring at intervals of approximately every three weeks, that she cannot sleep when affected with these nervous spells, and at times it is necessary that a doctor be called to attend her; that

there has been no change in this condition during the past year, and that prior to the collision resulting in her injuries she had not had any nervous spells or breakdown.

Appellant called Dr. Elston as a witness. He testified that he had made a physical examination of appellee and that she had given him a history of her case. Among other questions asked of and answered by this witness were the following: "Q. Did she complain about being nervous? A. Yes, she told us she had nervous spells at various times. Q. What if any examination did you make to determine the condition of her nerves? A. Well, I couldn't make any special examination to determine nervousness because nervousness is more or less of a mental state—something you can't put your finger on and you have to get the general impressions of the actions of the individual. It is like pain, you cannot prove or disprove it. It is up to the individual's statement. Q. You can't see it? A. No. Q. What do you have to depend on in analyzing the nervous state of a patient? A. There are various mental reactions and reflexes and I don't know—the general state of the individual, the way they react to surroundings and questions. Q. Do you place any credence in the history the patient gives you in determining a condition of nervousness? A. Yes you have to be guided by that, too. Q. Did she give you any history with reference to a physical condition that would have a bearing upon her nervous condition? A. Well, she stated that she had had an operation, female operation, some thirteen years ago and—I don't know that I am supposed to testify to that sort of thing or not. Q. Did she say what operation had been performed at that time? A. Yes."

At this point the witness was asked: "What was it? What did she tell you about that?" Appellee objected to

this question and appellant offered to prove that the witness, if permitted to answer the question, will testify that the plaintiff in this case (appellee) told him that thirteen years ago she had both her ovaries removed and that since that time she had had an operation for appendicitis and for a rectal abcess. The objection was sustained and the offer to prove refused. The witness was then asked: "Now, doctor, you may state what, if any, effect the removal of ovaries in a woman has on her nervous system and on her condition in after life?" Appellee objected to the question and appellant offered to prove that the witness if permitted to answer the question will state that the removal of the ovaries by means of surgery always produces in after life a very highly nervous condition. This objection was sustained and the offer to prove denied. The witness was next asked: "Now, doctor, you may state whether or not in your own opinion, from the examination which you made of this plaintiff and the history which she gave you as you have detailed to the jury and as incorporated in the offers to prove and the answers, has any bearing upon her present nervous condition?" Objection by appellee and an offer to prove by appellant that the witness if permitted to answer the question will answer—Yes. Offer refused and objection sustained. Another question asked is as follows: "Now, doctor, you may state whether or not in your opinion, the injuries which you have detailed to the jury and the history of which was given to you by the plaintiff in this case as growing out of an automobile accident, would in the absence of the removal of the ovaries, have produced the highly nervous state of which the plaintiff complains?" Objection, and an offer to prove that the witness if permitted to answer will answer—No. The offer to prove was refused and the objection sustained. The last of the series of

questions asked of this witness was: "Doctor, you may state whether or not, in your opinion, an operation in which a rectal abscess was removed by surgical means is an operation of a character which would produce or would be a contributing factor to the nervous condition of the patient in after life upon whom such operation was performed?" Objection, and an offer to prove that the witness if permitted to answer the question will answer—Yes sir. Offer to prove refused and objection sustained. Appellant duly excepted to each of the several adverse rulings excluding the offered evidence, and insists that a new trial should have been granted because of such claimed errors.

The record shows that the witness qualified as an expert medical witness. He made the examination of appellee at the request of appellant, with the consent of appellee, in order to acquaint himself with facts relative to her then condition, the causes for such condition, and to obtain by means of the examination information which would enable him to express on the witness stand, if he was called as a witness, his opinion as an expert. In view of the offers to prove made during the course of his testimony, we must assume that appellee, as a part of the history of her case, informed him of the operations which she had undergone prior to the collision resulting in her being injured. One of the elements of damages for which recovery was sought was extreme nervousness and there was evidence before the jury from which it may have concluded that such nervousness was wholly due to the shock and injuries suffered by appellee by reason of the collision. The offered evidence was certainly relevant and material. It had a direct bearing upon the question as to whether the nervousness with which appellee was inflicted was in fact the result of any conduct of appellant or whether it was due wholly or

partially to other causes for which appellant was in no way responsible.  In our opinion appellant had the right to have the rejected evidence given to the jury for its consideration in determining the amount of damages which should be assessed in the event that it reached the conclusion that damages should be awarded. We can not say that the substantial rights of the appellant were not prejudicially affected by the court's action.

Appellee insists, however, that no error was committed; that the excluded evidence was hearsay and that statements made to a physician are admissible only when descriptive of existing symptoms or pains and are not admissible when mere narratives of past occurrences.  Much has been written on this subject-matter and we shall not attempt to review the decided cases.  Our Supreme Court in the case of *Cleveland, etc., R. R. Co.* v. *Newell* (1885), 104 Ind. 264, 271, 3 N. E. 836, in discussing this question, said: "A physician may, however, testify to a statement or narrative given by a patient in relation to his *condition,* symptoms, sensations and feelings, *both past and present,* when such statements were received during and were necessary to an examination with a view to treatment, *or when they are necessary to enable him to give his opinion as an expert witness.*"  (Our italics.)   See also: *Louisville, etc., Ry. Co.* v. *Falvey* (1885), 104 Ind. 409, 3 N. E. 389, 4 N. E. 908.

The appellant has assigned in his motion for new trial as additional grounds or causes therefor, alleged error of the court in the giving of certain instructions, and in the refusal to give certain instructions tendered by him.  Inasmuch as the judgment must be reversed for the error of the court in the rulings heretofore mentioned as to the evidence, we do not deem it necessary to extend this opinion by a discussion of the instruc-

tions, as the alleged errors complained of, if errors, are not likely to occur in a re-trial of the cause. The conclusion reached likewise renders it unnecessary to discuss the other causes or grounds of the motion.

Judgment reversed with instructions to the trial court to sustain the motion for new trial and for further proceedings not inconsistent with this opinion.